## In re PORTER.

[Cite as *In re Porter* (1996), 113 Ohio App.3d 580.]

Court of Appeals of Ohio,
Third District, Marion County.

No. 9–95–43.

Decided Aug. 19, 1996.

*Piacentino & Piacentino* and *C. Michael Piacentino,* for appellant, Sarah Porter.

*Michael Grimes,* for appellee, Connie Sue Lowe–Workman.

*Maria L. Hypes,* guardian *ad litem,* for Amy Sue Porter.

EVANS, Judge.

This appeal is brought by Sarah Porter ("appellant"), the paternal grandmother of Amy Sue Porter, a minor, from a judgment of the Court of Common Pleas of Marion County, Juvenile Division, denying appellant's complaint for permanent custody.

The facts of this case are as follows. On March 7, 1982, Connie Workman, ("appellee") gave birth to Amy Sue Porter, out of wedlock. Amy's father is Thomas Porter. On August 3, 1987, appellee and Thomas Porter contractually agreed to temporarily place custody of their daughter, Amy, with Sarah and Keith Porter, the child's paternal grandparents, during a period of appellee's absence from the state of Ohio. The Porters then approached the Juvenile Division of the Court of Common Pleas of Marion County with a complaint for temporary custody, attaching the signed agreement of the parties. Without a hearing, the court filed an entry granting the Porters temporary custody of Amy on September 16, 1987.

At that time, Amy was five years old and had spent much of her infancy in the care of her paternal grandparents. For the next seven years, she was cared for by appellants, receiving occasional visits from her mother. (The record indicates that Connie Workman had a drug and alcohol problem that to some degree precipitated and extended the temporary custody arrangement.) Throughout this time, Amy had regular contact and visitation with her father. Both parents contributed to Amy's support while she was in the custody of the Porters. In 1994, the Porters moved to Arizona and took Amy with them. Thomas Porter also lived in Arizona at the time and continued regular visitation with Amy.

In September 1994, appellee filed a motion requesting the court to find appellant in contempt for failing to comply with a prior court order relating to visitation and a motion requesting the court to terminate the temporary custody order granting appellant custody of Amy. On October 27, 1994, the court dismissed the contempt charge and vacated the temporary custody order, re-

turning Amy to the custody of her mother without a hearing and over the objections of appellant. In its October 27, 1994 judgment entry, the trial court joined appellant as a party, granting her standing to file additional motions or actions relating to the custody of Amy.

On January 4, 1995, appellant filed a complaint for permanent custody. A hearing was held on August 14, 1995. On August 16, 1995, the trial court issued its decision from the bench, finding appellee a suitable parent with a paramount right to the custody of her minor child. This decision was journalized on August 25, 1995 and appellant filed a timely appeal.

Appellant now asserts four assignments of error for review. For the sake of clarity in this opinion, we will address the assignments of error out of sequence.

Assignment of Error No. Two

"The trial court committed error prejudicial to the appellant, Sarah Porter, by vacating its previous order. The trial court did not have jurisdiction to change custody because the pleading requirements of Section 3107.29 [*sic*, 3109.27] of the Ohio Revised Code were not met."

██ Appellant's second assignment of error alleges that appellee's failure to file an R.C. 3109.27 affidavit at the time she motioned the court for termination of the temporary custody order resulted in a jurisdictional flaw. Appellant argues that because the affidavit was not filed in September 1994, the court had no jurisdiction to vacate the previous order granting appellant temporary custody.

According to R.C. 3109.27:

"(A) Every party in a custody proceeding, in his first pleading or in an affidavit attached to that pleading, shall give information under oath as to the child's present address, the places where the child has lived within the last five years, and the names and present addresses of the persons with whom the child has lived during that period. In this pleading or affidavit every party shall also include all of the following information:

"(1) Whether the party has participated as a party, witness or in any other capacity in any other litigation concerning the custody of the same child in this or any other state;

"(2) Whether the party has information of any custody proceeding concerning the child pending in a court of this or any other state;

"(3) Whether the party knows of any person not a party to the proceedings who has physical custody of the child or claims to have custody or visitation rights with respect to the child."

The term "custody proceeding" is defined in R.C. 3109.21 as a proceeding "in which a custody determination is one of several issues, such as an action for divorce or separation, and includes child neglect and dependency proceedings."

Appellant cites the Supreme Court of Ohio's holding in *Pasqualone v. Pasqualone* (1980), 63 Ohio St.2d 96, 17 O.O.3d 58, 406 N.E.2d 1121, which made compliance with R.C. 3109.27 a jurisdictional requirement. The plaintiff in *Pasqualone* brought an action in Ohio for custody of his daughter without informing the court about a pending custody case in Illinois of which he was aware. The court in *Pasqualone* held that a parent bringing an action for custody must inform the court at the onset of the proceedings of any knowledge of custody proceedings pending in other jurisdictions. *Id.*, paragraph one of the syllabus.

The purpose of the affidavit is to avoid jurisdictional disputes and conflicts with other courts and to facilitate the speedy resolution of custody matters so that children do not become the victims of jurisdictional "tugs of war." *In re Palmer* (1984), 12 Ohio St.3d 194, 196, 12 OBR 259, 261–262, 465 N.E.2d 1312, 1314–1315. By the submission of an affidavit, the court is made aware at the onset of other proceedings affecting its jurisdiction.

After examining appellant's second assignment of error, we are not persuaded by her argument that appellee's failure to file an affidavit with her 1994 motion results in a failure of subject matter jurisdiction in this case. According to the statute, a jurisdictional affidavit should be filed in the parties' first pleadings. However, we note that the first pleading in this case was not appellee's motion to vacate the temporary custody order. In fact, by the time this motion was filed, the case had been continuing for approximately seven years. The juvenile court had been exercising continuing jurisdiction, issuing periodic judgment entries as needed to rectify child support and visitation problems between the parties. Rather, the first pleading submitted to the juvenile court was the complaint filed by appellant requesting temporary custody of Amy in accordance with the private agreement of the parties formed in August 1987.

The requirement that an affidavit be filed in a party's first pleading has been relaxed to allow amended pleading or subsequent filings to include the affidavit information. See *Squires v. Squires* (1983), 12 Ohio App.3d 138, 143, 12 OBR 460, 465–466, 468 N.E.2d 73, 78–79; *Cook v. Marion Cty. Court of Common Pleas* (1986), 28 Ohio App.3d 82, 28 OBR 124, 502 N.E.2d 245; *Mercer v. Channell* (May 14, 1986), Jackson App. No. 509, unreported, 1986 WL 6051. In the instant case, it was not until January 1995, after appellant had moved to Arizona and filed her complaint for permanent custody, that an R.C. 3109.27 affidavit was filed with the court. We note that appellee did not object to the averments made in appellant's affidavit. Furthermore, we find that much of the paperwork compil-

ing the record in this case demonstrates the parties' acknowledgement of facts sufficient to invoke the court's jurisdiction.

In *Adkins v. Adkins* (May 15, 1991), Pickaway App. No. 89 CA 26, unreported, 1991 WL 87301, the Fourth District Court of Appeals upheld the jurisdiction of the trial court in the absence of an affidavit.[1]  Judge Stephenson issued a detailed and insightful concurring opinion which reviewed the history, policy and application of R.C. 3109.27.[2]  In that concurrence, Judge Stephenson noted that where the information required by statute is eventually supplied to the court and no other jurisdiction appears to be involved in the custody dispute, mechanistic compliance with R.C. 3109.27 is not necessary.  See *Mercer v. Channell, supra.* Judge Stephenson wrote:

"* * * The Ohio Supreme Court has, itself, stated that when applying the provisions of the Uniform Act, the courts should be guided by, and take note of, the express purposes of said act which, among other things, is 'to avoid jurisdictional competition and conflict with the courts of *other states* and assure that the state with the optimum access to the relevant facts makes the custody determination, thus protecting the best interests of the child.' [Citations omitted; emphasis *sic.*]  There being no other states involved in the case *sub judice,* it is difficult to imagine what possible purpose could be served by a wooden mechanistic application of these statutory provisions.

"Moreover, we are admonished that the ultimate issue in any custody proceeding is the 'best interest of the child' and this concern is paramount to any application of the strictures of R.C. 3109.27." *Palmer* [12 Ohio St.3d at 197, 12 OBR at 262, 465 N.E.2d at 1315]."

Similarly, in cases with facts and circumstances distinguishable from *Pasqualone,* such as where the parties are in the same state and do not challenge the court's jurisdiction, some courts, in order to best uphold the policy considerations behind R.C. 3109.27, have deviated from *Pasqualone*'s strict affidavit require-

---

1.  We note that the majority opinion in *Adkins* based its decision on *In re Palmer* (1984), 12 Ohio St.3d 194, 12 OBR 259, 465 N.E.2d 1312.  The appellant in *Palmer* sought to frustrate the purpose of R.C. 3109.27 by attempting to create a jurisdictional conflict between the probate and juvenile courts.  This distinguishes *Palmer* from *Pasqualone.*  As a result, in the absence of an affidavit, the Supreme Court in *Palmer* upheld the use of an estoppel theory to confer jurisdiction where an opposing party knew of his opponent's failure to meet the jurisdictional requirements but did not raise the issue.

2.  Although Judge Stephenson agreed in the result reached by the majority in *Adkins,* because of factual differences between the cases, he was not persuaded of the applicability of the estoppel theory used in *Palmer* to the case at hand.  *Adkins,* at fn. 3.  For similar reasons, we do not find *Palmer* dispositive of appellant's assignment of error; however, the policy concerns expressed by the Supreme Court in relation to R.C. 3109.27 are germane to our determination in this case.

ment. In *In re Hites* (Apr. 22, 1981), Wayne App. No. 1701, unreported, 1981 WL 2930, the Ninth District Court of Appeals stated:

"[A]lthough appellee's motion did not mention the information required by R.C. 3109.27(A)(2), neither party claims that any other custody proceeding was pending. The purpose of this section of the UCCJA is to promote uniformity by allowing the first court with jurisdiction to decide the case for all jurisdictions. *Pasqualone, supra*, at 99 [17 O.O.3d at 60, 406 N.E.2d at 1124]. It would defeat this purpose to deny that the trial court had jurisdiction in the present case because appellee did not affirmatively deny that any other custody actions were pending. Most assuredly, the trial court could have refused to proceed to final judgment until there was compliance with the statutory requirements by affirmative informational averments. * * * "

Also using similar reasoning, the court in *Ewing v. Ewing* (June 10, 1983), Clermont App. No. 1209, unreported, distinguished *Pasqualone* from cases involving intrastate custodial cases where jurisdiction was not challenged. The *Ewing* court found:

"Having granted jurisdiction to the trial court of this state on matters of custody, it appears to this Court that it would be inconsistent for the legislature to intend by the enactment of the [UCCJA] to require an affirmative act by the parties to invoke that jurisdiction * * *.

" * * *

"It appears to this Court that R.C. 3109.27 is a conditional denial of jurisdiction in a custody proceeding in a court in this state. If there is, in fact, a custodial dispute in this state or any other state which has or is entertaining jurisdiction in the dispute, such facts must be made known to the court whose jurisdiction is sought to be invoked. The party failing to do so would then be denied the relief or advantage sought since any order granted would be without jurisdiction."

Likewise, we find that a blind adherence to the affidavit requirement in the instant case would frustrate the policy behind the rule. Such a mechanistic interpretation of R.C. 3109.27(A) has been discouraged by the Supreme Court in *Palmer, supra*. Unlike in *Pasqualone*, no party in this case claims to have instituted or have knowledge of custody proceedings pending in another jurisdiction. Until 1994, all the parties involved in this case lived in Ohio. Furthermore, as evidenced by the affidavit she supplied to the court in January 1995, at no time after appellant moved to Arizona did she institute a new custody action involving Amy. Also relevant is the fact that over the years, the record has accumulated much of the necessary information sought by R.C. 3109.27. For the foregoing reasons, we find that the jurisdiction of the trial court in this case has been

sufficiently invoked. Therefore, we overrule appellant's second assignment of error.

Assignment of Error No. Three

"The trial court committed error prejudicial to the appellant, Sarah Porter, by terminating its order of September 16, 1987, without hearing or evidence. This order was an abuse of discretion."

■ Initially, we note appellant's inability to cite supporting authority for the proposition that a hearing should have been granted in this situation. We find no abuse of discretion in the actions of the trial court terminating the temporary custody order first established in 1987, upon motion and without a hearing. Although initiated by appellant's complaint for temporary custody, the court granted the temporary custody in accordance with the agreement of the parties submitted with the complaint. No hearing was needed on the matter. According to the terms of the agreement, the change in custody was to last the duration of appellee's absence from the state. Apparently by private agreement, the parties extended the order for years during appellee's in-state presence, since prior to 1995, no evidence exists in the record demonstrating an intention to permanently change custody or alter the existing arrangement other than orders relating to visitation and support. Still, the order was temporary in nature, if not in reality. It follows then that upon request of a parent, the court could terminate the order in the manner in which it was granted, without argument or a hearing.

However, due to the length of time that Amy was in the custody of appellant, it appears the trial court saw fit to allow appellant standing to file whatever actions or motions she wished in the case following the termination of the temporary order. As a result, appellant was given an opportunity to present a case for permanent custody. Appellant proceeded to bring a new complaint for permanent custody. A hearing was held and evidence and argument heard. Therefore, we find no merit in appellant's claim that she was unfairly prejudiced by the termination of the temporary custody order. Appellant's third assignment of error is overruled.

Assignment of Error No. One

"The trial court committed error prejudicial to the appellant, Sarah Porter, by finding that it cannot get to the best interest of the child until it determines the mother to be unsuitable and that the best interest of the child test is subservient to the test set forth in *Perales*."

Assignment of Error No. Four

"The trial court committed error prejudicial to the appellant, Sarah Porter, by failing to find a contractual relinquishment of custody."

Because these assignments of error stem from the hearing on the complaint for permanent custody and involve related legal analyses, we will address them jointly.

■ Appellant contends that the trial court misinterpreted the rule set out by the Supreme Court of Ohio in *In re Perales* (1977), 52 Ohio St.2d 89, 6 O.O.3d 293, 369 N.E.2d 1047, when it refused to employ the "best interest" test when determining the issue of custody in this case. Appellant claims the trial court's error is manifested in its journal entry filed August 25, 1995, which states:

"Thus, following the case of *In re Perales,* 52 Ohio St.2d [at] 90, [6 O.O.3d at 293, 369 N.E.2d at 1048], this Court finds the mother to be a 'suitable' person and thus has a 'paramount' right to the custody of the minor child. This makes the best interest of the child test subservient to the test set forth in *Perales.*"

Contrary to the trial court, appellant contends that a finding of parental unsuitability is not a prerequisite under *Perales* to examining the best interest of the child. Furthermore, appellant contends that the trial court erred when it refused to consider what would be in the best interests of the child.

The Supreme Court of Ohio in *Perales*, at paragraph one of the syllabus, set out the rule to be used in custody proceedings between a parent and a nonparent:

"In an R.C. 2151.23(A)(2) child custody proceeding between a parent and a nonparent, the hearing officer may not award custody to the nonparent without first making a finding of parental unsuitability—that is, without first determining that a preponderance of the evidence shows that the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child." See *Clark v. Bayer* (1877), 32 Ohio St. 299, paragraphs one and two of the syllabus; *Reynolds v. Goll* (1996), 75 Ohio St.3d 121, 123, 661 N.E.2d 1008, 1009–1010.

Parents who are deemed suitable are considered to have the "paramount" right to custody of their minor children. *Perales,* 52 Ohio St.2d at 97, 6 O.O.3d at 297, 369 N.E.2d at 1051–1052. This paramount right, however, can be forfeited by demonstrating unsuitability, as described above, by a preponderance of the evidence. Once the paramount right to custody is forfeited, the court will look to the best interests of the child when determining a change of custody.

Appellant argues that when a court considers whether an award of custody to the parent would be detrimental to the child under *Perales,* the court is essentially determining what is in the best interest of the child. At the hearing for permanent custody held on August 14, 1995, appellant presented evidence via the guardian *ad litem* that it would be in the best interest of Amy to be returned to her grandmother's custody.

However, appellant overlooks a distinction which exists between a pure "best interest test" and the test of detriment to the child used in *Perales*. A pure best interest test looks to the best custodial situation available for the child and then places the child there. Under *Perales,* parental custody is presumed to be in the best interests of the child unless it can be shown that placement with a parent will be detrimental to the child. *Thrasher v. Thrasher* (1981), 3 Ohio App.3d 210, 214, 3 OBR 240, 243–244, 444 N.E.2d 431, 434–435. While it could be argued that evidence at the hearing was presented to show that Amy's best interests would require custody be returned to appellant, there was no evidence to show, by a preponderance, that parental custody would be detrimental to Amy. Simply because one situation or environment would have been the "better" situation, does not mean the other is detrimental or harmful to the child. While appellant relies on the testimony of the guardian *ad litem* to show a detriment, the guardian *ad litem* testified that her report evaluated only the best interests of the child.

"Mr. Grimes [counsel for the appellee]:

" * * * I want to make sure I have this on the record, you are now making some recommendation what you think would be best for the child. You're sensually [*sic*] treating both these people as [if] they had a status of parents aren't you?

"Mrs. Hypes [guardian *ad litem* ]:

"Basically yes.

"Mr. Grimes:

"Okay. And it, is there some reason that you have not put in your report that disqualifies * * * my client from having custody of her child?

"Mrs. Hypes:

"No. I, my report goes strictly to what I think is in the best interest of the child. Uhm, nothing goes to indicating either parent, either person is not qualified."

Furthermore, many of the worries of the guardian *ad litem* were dispelled at the custody hearing. The guardian *ad litem* 's report indicated a concern about the amount of time Amy spent home alone at night while her mother worked. However, by the time of the hearing, appellee had taken a new job at less pay to stay home with Amy. Other concerns such as Amy's emotional need for her grandmother and Amy's negative perception of her opportunities in Ohio versus in Arizona were also contradicted. Moreover, concerns about appellee's past alcohol problem received only cursory attention and examination at the hearing.

As the trier of fact in this case, the trial court failed to find a preponderance of the evidence demonstrating appellee's unsuitability as a parent. Since appellee was not shown to be unsuitable, the trial court correctly applied *Perales* in holding that appellee has the paramount right to custody over appellant, a nonparent.

█ In her fourth assignment of error, appellant asserts, for the first time, that appellee contractually relinquished custody of the minor child to appellant. Under *Perales,* if this assertion were true, the court could then apply the best-interest-of-the-child test since the parent, by virtue of the relinquishment, has forfeited his or her primary right to custody. However, whether a parent relinquished custody, thereby forfeiting the paramount right to custody, is a question of fact to be determined by the factfinder. *Miller v. Miller* (1993), 86 Ohio App.3d 623, 621 N.E.2d 745.

The record presented to this court demonstrates that appellant first took custody of Amy by agreement of all parties involved and only on a temporary basis. The parties signed a contract and obtained a court order to that effect. Although the period of temporary custody extended for six years, appellant presented no evidence and made no argument at the hearing that appellee contractually relinquished her parental rights. Based on appellant's failure to demonstrate a contractual relinquishment, we can find no error in the judgment of the trial court. For the foregoing reasons, appellant's first and fourth assignments of error are overruled.

Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment affirmed.*

HADLEY, P.J., and THOMAS F. BRYANT, J., concur.