OPINION
On appeal appellant sets forth the following as her sole assignment of error:
 "The Trial Court abused its discretion and erred as a matter of law by denying Appellants' motion for custody."
The undisputed facts which are relevant to the issues raised on appeal are as follows. Appellee Holly B. is the mother of Craig S., III ("Craig III"), born on April 24, 1994. Craig III's father is Craig S., Jr. ("Craig Jr."). Immediately after his birth Craig III, who was a premature infant, was hospitalized for ten days at Toledo Hospital, followed by a twenty-one day stay at Fisher Titus Medical Center in Norwalk, Ohio. Following Craig III's release from the Medical Center, Holly B. took Craig III and his older brother, Nathan,[1] to live with Craig Jr. and appellant, Cathy L., who is Craig III's paternal grandmother. Approximately one month later, the two boys and Holly B. left appellant's house in the middle of the night and went to live with Holly's mother, Terry R.
Over the following months, Holly B. and the boys lived in several different homes. In August 1995, Holly's sister, Heather, asked Holly B. if the boys could stay with her while Holly, who was unemployed, went to look for a job. During the time the boys lived with Heather, appellant assisted in caring for them by babysitting on weekends. In October 1995, Heather, with Holly's knowledge and consent, allowed Craig III to live with appellant.
On November 6, 1995, appellant filed the complaint herein, in which she stated that "she is entitled to custody" of Craig III because he was living with appellant at the time the complaint was filed and had lived with appellant "periodically through out his life," Holly B. cannot provide a "stable home" or medical care for Craig III, and it is in Craig III's "best interest" that custody be awarded to appellant. In December 1995, Holly B. moved back to her mother's house with Nathan and Brandon, where she has continued to live throughout these proceedings. Craig III continued to live with appellant. On January 24, 1996, pursuant to the parties' agreement, the trial court filed a judgment entry in which it awarded temporary custody of Craig III to appellant and awarded visitation to Holly B. and Craig Jr., pending a full hearing on the matter. On June 7, 1996, the trial court ordered the parties to undergo psychological evaluations and drug and alcohol assessments.
Shortly thereafter, Kathryn C. MacCluskie, Ed.D., interviewed appellant, Holly B., Craig Jr., Glenn Trippe, M.D., and Erie County DHS worker, Renee King. On August 15, 1996, MacCluskie submitted a written report to the trial court in which she concluded that "[Craig III] will probably receive the best parenting care if he remains in the custody of [appellant]."
MacCluskie stated that, based on the interviews she conducted with the parties, her observations of Craig III's interaction with his parents and appellant, her investigation regarding Craig III's medical history and Holly B.'s frequent changes of residence, and the results of certain personality assessment tests administered to Holly B., Craig Jr. and appellant, the facts "essentially stack up to lean in the direction of [appellant] as the preferred custodial adult." MacCluskie also recommended that both parents adhere to a "standard schedule" of visiting with Craig III on alternating weekends and "negotiated holidays."
In addition to MacCluskie's study and report, a home study investigation was conducted by Erie County Custody Investigator, Laura DeFabbo. As part of her investigation, DeFabbo interviewed Holly B. and Terry R., and performed an on-site inspection of Terry R.'s home. In her final recommendation to the trial court, DeFabbo recognized that Holly B. seemed to genuinely love Craig III and would like him to become a more integral part of her life. However, DeFabbo further stated that Craig III appeared to be a "happy and well cared for baby" while in appellant's care. DeFabbo then stated that she concurred with MacCluskie's conclusion that appellant could give Craig III the "best parenting care." DeFabbo noted that she had not received the results of the parties' court-ordered drug and alcohol evaluations before making her final recommendation "regarding to [sic] best possible placement for [Craig III]."
On August 22, 1996, and January 16, 1997, hearings on appellant's complaint for custody were held before Magistrate Vickie Palmer, at which testimony was presented by Dr. Trippe, appellant, Milan Police Chief James H. Ward, Sr., appellant's daughter, Taneal S., Craig Jr., Holly B., Holly B.'s mother, Terry R., and Holly B.'s grandmother, Violet O.
Dr. Trippe testified at the hearing that he had been Craig III's pediatrician since his birth. Trippe further testified that as of the hearing date Craig III was a happy, healthy two-year old; however, because he was a premature infant, Craig III suffers from recurring ear infections and respiratory problems. Dr. Trippe stated that he does not remember Holly B. bringing Craig III to his office; however, he noted in the boy's medical chart that appellant brought Craig III in for visits on several occasions. He further stated that Craig III did not receive any childhood vaccinations until March 1, 1996, several months after appellant obtained temporary custody of the child. Dr. Trippe testified that he did not know why Craig III was not vaccinated in a timely manner; however, he stated that when Craig III was an infant his health care was paid for by Medicaid, which does not pay private physicians to vaccinate children; and, generally, vaccinations are not given when a child is ill.
Police Chief Ward testified at the hearing that he was appellant's former employer, and that appellant was a good employee. Ward also testified that he once issued Holly B. a traffic citation for driving with her children in an "unsafe vehicle" which had no turning signals, a bald tire, and no horn.
Taneal S., appellant's daughter, testified at the hearing that she visits Craig III frequently at her mother's home and that he is a "real happy child." Taneal further testified that appellant gives Craig III appropriate medical care and meets his other needs. Taneal stated that she is Craig III's godmother and her boyfriend is his godfather. She also testified that appellant had Craig III baptized in the United Methodist Church in Sandusky, Ohio, without inviting Holly B. to the ceremony.
Craig Jr. testified at the hearing that he lived with Holly B. after his son's birth until the fall of 1995. He further testified that Holly B. had "a few" different residences since Craig III's birth; however, he did not know how many. Craig Jr. stated that Holly "played with the kids but she never kept things real neat around the house," and that Holly took "good care" of Craig III, but was not as good a caretaker as his mother. Craig Jr. testified that Holly B. and the two boys moved out of appellant's house after appellant and Holly had a fight. He stated that he sees his son every other weekend at either his own house or appellant's house. Craig Jr. further stated that Craig III was baptized in August 1996, when he was two and one-half years old.
Terry R. testified at the hearing that Holly had moved in and out of her house at least four times since Craig III's birth; however, Holly B., Nathan and Brandon have been living with her since December 1995. She further testified that visitation "transitions" between appellant and Holly are rarely smooth, and that appellant had refused to allow Holly to spend Christmas day with Craig III for the past two years. Terry R. stated that all of Holly's requests for extra visitation with Craig III were denied by appellant, including requests for visits on family members' birthdays.
Holly B. testified at the hearing that she has been unemployed since before Craig III's birth; however, she occasionally babysits for her aunt's children. She further testified that she receives no ADC benefits, food stamps or child support, that Terry R. and her fiance, Keith G., support her and her children, and that she has had a "stable life" since December 1995. Holly stated that she gave Nathan and Craig III to her sister Heather in October 1995, after Heather offered to take the boys to "help [her] out a little bit" while she was looking for a job. Holly further stated that she was aware that appellant was babysitting the boys while Heather worked the night shift at a local bar, and she did not object to Craig III going to live with appellant, until she found out that appellant intended to seek custody of her son.
Holly B. further testified that she left appellant's home when Craig III was two months old because appellant was drunk and fought with her and Craig Jr. She stated that she is Catholic, and was never informed by appellant that Craig III was to be baptized in the Methodist church. She also stated that she initially went to live with appellant after Craig III was released from the hospital, because the child had respiratory problems and was on a heart monitor and she, appellant, and Craig Jr. had been trained in CPR at the hospital.
Appellant testified at the hearing that she is a certified, licensed home day care provider for Erie County, and that she regularly cares for Craig III and two other children, ages five and twelve. She further stated that Craig III, who has had chronic health problems since birth, is not exposed to illnesses because of the other children, since she is able to call someone to pick the children up if they get sick while in her care.
Violet O. testified at the hearing that she called appellant on December 28, 1996 to ask if Craig III could come to a Christmas celebration on December 30 at her house; however, appellant denied Violet O.'s request.
On January 29, 1997, the magistrate filed a decision in which she found that Holly B. did not abandon Craig III when she left him with her sister Heather, and Holly B. did not contractually relinquish Craig III to Heather or appellant. The magistrate also found that Holly B. "does have the means and ability to provide care and support for [Craig III]" and, although the evidence shows that Holly is "immature and, at times, irresponsible," there is no evidence that "[Craig III's] welfare would be in jeopardy in his mother's custody."
The magistrate noted that Craig III's health did not significantly improve while he was in appellant's care, and appellant did not have the child vaccinated until six months after he came to live with her. The magistrate further noted that evidence was presented that appellant is not flexible in allowing Holly B. to see her son other than as dictated by the court-ordered visitation schedule, and appellant deliberately had Craig III baptized outside his mother's faith and without her knowledge or consent. Based on the above findings of fact, the magistrate concluded that:
 "[Holly B.] is a suitable parent and * * * it would not be detrimental to Craig, III, to be placed in her care. The Magistrate, therefore, recommends that [appellant's] request for custody be denied, and that [Holly B.] be granted custody of her son, [Craig III] * * *."
Accordingly, the magistrate recommended that appellant's request for custody of Craig III be denied.
On February 10, 1997, appellant filed an "APPEAL OF THE MAGISTRATE'S DECISION" and on February 21, 1997, Holly B. filed a response thereto. On June 4, 1997, Holly B. filed a motion to dismiss appellant's "appeal," in which she alleged that appellant had not filed a transcript of the hearings below or a memorandum of law in support thereof. On June 5, 1997, appellant filed a response to Holly B.'s motion to dismiss, and on June 6, 1997, the trial court filed a judgment entry granting Holly B.'s motion to dismiss. On June 13, 1997, appellant filed a motion for relief from the June 6, 1997 judgment, pursuant to Civ.R. 60(B), and on September 2, 1997, the trial court filed a judgment entry in which it adopted the magistrate's decision, thereby rendering appellant's Civ.R. 60(B) motion moot. On October 2, 1997, appellant filed a timely notice of appeal.
Appellant asserts in her sole assignment of error that the trial court abused its discretion by awarding custody of Craig III to his mother, Holly B. In support thereof, appellant argues that appellant "abandoned" Craig III when she left him in Heather's care and then allowed him to live with appellant, and "the record is replete with evidence to indicate that custody of the child with [Holly B.] would be detrimental to the child."
R.C. 2151.23 provides, in relevant part:
 "(A) The juvenile court has exclusive original jurisdiction under the Revised Code as follows:
 "(2) * * * to determine the custody of any child not a ward of another court of this state; * * *."
It is well-settled in Ohio that:
 "In an R.C. 2151.23(A)(2) child custody proceeding between a parent and a nonparent, the hearing officer may not award custody to the nonparent without first making a finding of parental unsuitability — that is, without first determining that a preponderance of the evidence shows that the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child." In re Perales (1977), 52 Ohio St.2d 89, at the syllabus.
Parents who are deemed suitable are considered to have a paramount right to custody of their minor children over that of non-parents. Id. at 97. Accordingly, "[u]nder Perales, parental custody is presumed to be in the best interests of the child unless it can be shown that placement with a parent will be detrimental to the child." In re Porter (1996), 113 Ohio App.3d 580,589. Whether or not a parent has relinquished his or her rights to custody is a factual determination to be made by the trier of fact. Such a determination will not be disturbed on appeal if it is supported by some reliable, credible evidence.Reynolds v. Goll (1996), 75 Ohio St.3d 121, 124; Masitto v.Masitto (1986), 22 Ohio St.3d 63, 66.
In addition, it is a well-established rule in Ohio that a trial court's ultimate decision as to the custody of children will not be overturned on appeal absent an abuse of discretion.Reynolds, supra, at 122, citing Trickey v. Trickey (1952),158 Ohio St. 9. "The term `abuse of discretion' connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217.
Our review of the record in this case reveals no evidence that Holly B. contractually relinquished her son to appellant or to her sister Heather, or that Craig III's welfare would be jeopardized if he were in his mother's care. Further, while evidence was presented at the hearings that Holly B. temporarily left Craig III in the care of her sister and appel lant while she looked for a job, such evidence does not necessarily support a finding that Holly "abandoned" her child.
As to whether she is capable of supporting Craig III, Holly B. testified that at the time of the hearings she lived with her mother, received financial support from her fiance, and had some income from a part-time babysitting job. Holly further stated that her life had been "stable" since December 1995. Although appellant relies on the reports of MacCluskie and DeFabbo to demonstrate that she is better able to meet Craig III's needs than his mother, we note that the writers of those reports only evaluated whether placing Craig III with appellant would be in his best interest, based on the parties' relative ability to meet his physical needs, and did not address the threshold issue of whether being in his mother's care would be detrimental to Craig III.
This court has reviewed the entire record of proceedings before the trial court and, upon consideration thereof and the law, finds that the record contains reliable, credible evidence to support the trial court's findings, and the trial court did not abuse its discretion by dismissing appellant's complaint and awarding custody of Craig III to his mother, appellee Holly B. Accordingly, appellant's sole assignment of error is not well-taken.
On consideration whereof, this court finds further that substantial justice has been done the party complaining, and the judgment of the Erie County Court of Common Pleas, Juvenile Division, is affirmed. Court costs of these proceedings are assessed to appellant.
JUDGMENT AFFIRMED.
 Peter M. Handwork, P.J.
 George M. Glasser, J.
 Richard W. Knepper, J.
CONCUR.
[1] As of the time of the filing of this appeal appellee, Holly B., was the mother of three children: Nathan B., born March 3, 1993, Craig, and Brandon, born in August 1995. Each of the boys has a different father. Craig is the only child whose custody is at issue in this case.