OPINION.
{¶ 1} Appellant, Patricia Ann Newsome, appeals from a final judgment of the Portage County Court of Common Pleas denying her motion for permanent custody and awarding legal custody of her minor son, Christopher Walther, to the child's paternal grandmother, Nancy Brown ("Brown"). For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} The record shows that on January 11, 2001, appellant filed a motion with the trial court requesting permanent custody of her seven-year old son, Christopher, following the death of the child's father, David Walther ("Walther"). The child had been living with his paternal grandparents while Walther went through treatment for cancer. On February 6, 2001, Brown, the child's paternal grandmother, filed a motion asking the trial court to allocate to her the parental rights and responsibilities for Christopher, along with a motion to intervene in the dispute between appellant and Walther over Christopher's custody.[1]
 {¶ 3} The trial court granted Brown's motion to intervene. On June 21, 2001, a hearing was held before a magistrate to determine which party should have temporary custody of Christopher, as well as various other motions. After considering the evidence, the magistrate continued Christopher's temporary placement with Brown.
 {¶ 4} On January 7, 2002, the magistrate issued another decision in which he recommended that the trial court award Brown legal custody of Christopher. In doing so, the magistrate found that Brown had continued to facilitate and promote Christopher's relationship with appellant and her relatives. The magistrate further found that appellant would not facilitate and further the child's relationship with either her own family or Brown:
 {¶ 5} "[Appellant] testified as to her relationship with Nancy and Don Brown, including the difficulty she had communicating with them and her frustration at the fact that they have not responded favorably to her requests for either more time with Christopher or to her requests to modify the times she sees him. Dr. McPherson concluded there `there is substantial hostility and lack of accord between the Browns and [appellant]." [Appellant] did not accept any responsibility for the communication difficulties nor did she credibly indicate any willingness to compromise for Christopher's benefit. The Browns, while not openly inviting to [appellant], have continued to facilitate and promote Christopher's relationship with his mother. There is no evidence which suggests they have ever tried to influence Christopher to have negative feelings toward [appellant]. The past record lends credibility to the Brown's testimony that they will continue to facilitate and promote Christopher's relationship with his mother, a credibility which is lacking in [appellant's] testimony of her willingness to meet Christopher's need to maintain a relationship with the Browns ad [sic] their extended family.
 {¶ 6} "Christopher's need to maintain a relationship with his mother's extended family is even more problematic as it relates to [appellant's] ability to provide for that need. [Appellant] has not talked with her mother and siblings in at least seven years, except for the time two years ago when she met with her brother James in an attempt to solicit his assistance in her efforts to bring a claim of sexual abuse of Christopher by his father. While [appellant] maintained in her testimony that she only wanted James to watch out for Christopher, the testimony of James Newsome and the record of prior hearings on that [sic] issues show [appellant's] testimony to be totally devoid of any credibility. [Appellant] is estranged from her family, she has made no effort to end that estrangement and there is no reason to believe that she will make any serious effort to see that the important relationship Christopher has with these family members will continue.
 {¶ 7} "Given the significant need Christopher has, as Dr. McPherson stated, `to acquire, rather than lose in the way of family is paramount' an award of custody of Christopher to his mother would be detrimental to Christopher."
 {¶ 8} Based on the evidence, the magistrate concluded that an award of custody to appellant would be detrimental to Christopher. The trial court adopted the magistrate's decision and awarded legal custody of Christopher to Brown. On January 22, 2002, appellant filed objections to the magistrate's decision. Appellant argued that the decision was in error because it was based solely upon the belief that she might not continue Christopher's relationship with family members. On February 5, 2002, the trial court overruled appellant's objections.
 {¶ 9} From this decision, appellant filed a timely notice of appeal with this court. She now submits the following assignment of error for our consideration:
 {¶ 10} "The state violated the 14th Amendment to the U.S. Constitution, by awarding custody to a non-parent instead of a parent where the court's basis was that the state disagreed with what it anticipates will be the parent's likely future decisions relative to how much time the child will spend with extended family members."
 {¶ 11} In her sole assignment of error, appellant contends that the trial court abused its discretion by awarding legal custody of Christopher to his paternal grandmother. Appellant argues the trial court's ruling violates the United Sates Supreme Court's holding inTroxel v. Granville (2000), 530 U.S. 57, which, appellant claims, reaffirmed the principle that parents have a fundamental constitutional right to raise their children as they deem appropriate, including the relationship between the children and extended family members.
 {¶ 12} R.C. 2151.23 gives juvenile courts exclusive jurisdiction to "determine the custody of any child not a ward of another court of this state." With respect to this determination, the Supreme Court of Ohio has held that:
 {¶ 13} "In an R.C. 2151.23(A)(2) child custody proceeding between a parent and a nonparent, the hearing officer may not award custody to the nonparent without first making a finding of parental unsuitability that is, without first determining that a preponderance of the evidence shows that the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child." In re Perales
(1977), 52 Ohio St.2d 89, at syllabus. See, also, Reynolds v. Goll
(1996), 75 Ohio St.3d 121
 {¶ 14} Parents who are deemed suitable are considered to have the paramount right to custody of their minor children. Perales at 97. The right of parents to raise their children, coupled with the concomitant right of children to be raised by their parents, may not be interfered with unless the parent is unfit. Quilloin v. Walcott (1978), 434 U.S. 246. Under Perales, parental custody is presumed to be in the best interests of the child unless it can be shown that placement with a parent will be detrimental to the child. In re Porter (1996), 113 Ohio App.3d 580, 589.
 {¶ 15} A trial court's determination of whether a parent is unsuitable is within the court's sound discretion. The power of the trial court to exercise discretion in child custody determinations is particularly important and should be accorded the utmost respect. Therefore, a reviewing court should be guided by the presumption that the trial court's findings were correct. Reynolds at 124. A trial court's determination of whether a parent has forfeited his or her right to custody is a factual determination that will not be reversed by a reviewing court if it is supported by some competent, credible evidence. Id. Absent an abuse of discretion, an appellate court will not reverse a trial court's determination in a child custody matter. Davis v.Flickinger (1997), 77 Ohio St.3d 415, 416-417. An abuse of discretion connotes more than an error of law or judgment; rather, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 16} In State ex rel. Reeves v. O'Malley (June 1, 2001), 8th Dist. No. 78900, 2001 WL 664137, at 6, the court noted that Troxel does not hold that a parent must be given custody over a nonparent. Instead, the majority in Troxel merely held that the best interest standard applied by the state of Washington, as applied to the broad visitation statute at issue, did not give sufficient deference to parental prerogatives. Reeves at 6.
 {¶ 17} However, in Esch v. Esch (Feb. 23, 2001), 2d Dist. No. 18489, 2001 WL 173198, the court applied Troxel to a custody dispute between a parent and nonparent. The court stated that Troxel established that a state infringes upon a parent's fundamental right to raise his or her child, unless some credence or presumption is afforded the parent's decisions. Esch at 4.
 {¶ 18} Here, the magistrate found appellant to be an unsuitable parent. The trial court adopted the magistrate's findings and recommendations in its entirety. Thus, it concluded that an award of custody to appellant would be detrimental to Christopher because the magistrate believed appellant would sever Christopher's relationship both with Brown as well as appellant's family from whom she was estranged. Furthermore, the court found that appellant had failed to consistently exercise her right to visit Christopher while he was in his father's custody; for example, appellant had no contact with Christopher from April 1999 until December 2000. Appellant also had never paid any child support through the years, despite being employed and taking care of another son.
 {¶ 19} The trial court also found that from the age of two until the present, Brown and her husband had daily involvement in Christopher's life and actually assumed complete care of the child when Walther became incapacitated and eventually succumbed to his disease. In addition, the court focused on the psychological evaluations that were emphatic that a loss of contact and interaction with the paternal grandparents and appellant's extended family would be "devastating" to the child's well-being. This was particularly so in light of the loss of his father.
 {¶ 20} The record in this case shows that appellant, although filing objections to the magistrate's decision, failed to include a transcript or suitable substitute with those objections, despite the fact that the proceedings were recorded. Civ.R. 53(E)(3)(b) provides that "[a]ny objection to a finding of fact shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that fact or an affidavit of that evidence if a transcript is not available." The duty to provide a transcript or affidavit to the trial court rests with the person objecting to the magistrate's decision. In re O'Neal (Nov. 24, 2000), 11th Dist. No. 99-A-0022, 2000 WL 1738366, at 3. This court has repeatedly held that if the objecting party fails to provide either of the above in support of her objections, "she is precluded from arguing factual determinations on appeal." Yancey v. Haehn (Mar. 3, 2000), 11th Dist. No. 99-G-2210, 2000 WL 263757, at 2. As a result, "when no transcript or affidavit is provided to the trial court in support of objections to a magistrate's decision, this court is limited to determining whether or not the trial court abused its discretion in adopting the magistrate's decision." Ackroyd v. Ackroyd (June 30, 2000), 11th Dist. No. 99-L-018, 2000 WL 895599, at 1.
 {¶ 21} Without a transcript of the hearing or a similar affidavit, appellant cannot demonstrate the alleged error. As we noted above, appellant is arguing that the trial court should have granted permanent custody of Christopher to her instead of the child's paternal grandmother. This analysis would obviously require the trial court and this court to review the testimony given at the hearing. Unfortunately, appellant's failure to provide a transcript or affidavit precludes us from considering her sole assignment of error because this court must presume that record supports the trial court's judgment unless appellant can demonstrate otherwise. Yancey at 3.
 {¶ 22} That being said, even though appellant did not file a transcript or affidavit, the trial court was still obligated to review the magistrate's decision and determine whether there was an error of law or other defect on the face of the decision. Civ.R. 53(E)(4)(a). In the instant matter, the trial court reviewed the magistrate's decision and adopted it in its entirety. Our own review of the decision shows that the magistrate's decision was legally sufficient, meticulous in its detail, and contained no obvious errors of law on its face. Thus, it fully complied with the requirements of Civ.R. 53, and the trial court did not, as a result, abuse its discretion in adopting the decision of the magistrate.
 {¶ 23} Appellant's sole assignment of error has no merit. The judgment of the juvenile court, therefore, is affirmed.
Judgment affirmed.
DONALD R. FORD, P.J., concurs.
DIANE V. GRENDELL, J., dissents with dissenting opinion.
[1] Christopher had been living with Brown since November 15, 2000.