OPINION
{¶ 1} Defendant-appellant, Timothy Warner, appeals from the April 30, 2007, Journal Entry of the Guernsey County Court of Common Pleas, Juvenile Division, ordering that appellee, David Ritterbeck, is the residential and legal custodian of Destanie Ritterbeck.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Destanie Ritterbeck, who was born in June of 1998, is the biological child of appellant Timothy Warner and Amanda Ritterbeck.
 {¶ 3} On July 22, 1998, appellee David Ritterbeck, Destanie's maternal grandfather, and Amanda Ritterbeck's father, filed a motion pursuant to R.C. 2151.23 seeking custody of Destanie. Appellee, in his complaint, alleged that Amanda Ritterbeck was unwilling and/or unable to provide for her child and that appellant, who was then the putative father, "has had no substantial contact with the minor child since her birth." On the same date, appellee filed a motion seeking temporary custody of Destanie. Pursuant to an ex parte order filed on July 22, 1998, appellee was granted temporary custody of Destanie.
 {¶ 4} A hearing on appellee's complaint for custody was held on January 25, 1999. Appellant did not appear for such hearing. Pursuant to an Entry filed on February 4, 1999, the trial court granted custody of Destanie to appellee and awarded visitation to Amanda Ritterbeck. The trial court, in its Entry, found that it was in the best interest of Destanie to grant custody to appellee. The trial court also ordered Amanda Ritterbeck to pay child support. Appellant began paying support for Destanie in 2003. *Page 3 
 {¶ 5} Subsequently, on July 25, 2006, appellant filed a Motion for Modification of Custody, seeking custody of Destanie. Appellant, in his motion, alleged that appellee was not providing suitable living arrangements for her. Appellant specifically alleged, in part, that there was no running water in appellee's "shack" and that a porta-john was being used as a restroom. On July 25, 2006, appellant also filed a motion for an ex parte order granting him temporary custody of Destanie. Such motion was denied pursuant to a Journal Entry filed on July 28, 2006.
 {¶ 6} The Guardian ad Litem, in a report filed with the trial court on November 28, 2006, recommended that appellant be awarded custody of Destanie. In contrast, the CASA (Court Appointed Special Advocate) volunteer, in a report filed with the trial court on January 23, 2007, indicated that she believed removing Destanie from appellee's home would not be in Destanie's best interest. The CASA noted that appellee was Destanie's only consistent care giver, that Destanie had expressed a desire to continue living with him and that appellee's home was neat, clean and safe. Attached to the CASA's report was a letter from Mary Lou Podlasiak, Destanie's school guidance counselor. Podlasiak, in her letter, indicated that she believed that it not would be in Destanie's best interest to remove her from the only home that she had ever known.
 {¶ 7} On February 6, 2007, appellee filed a Motion for Permanent Legal custody of Destanie. Appellee, in his motion, alleged that appellant had abandoned Destanie and that it was in Destanie's best interest to remain with appellee. *Page 4 
 {¶ 8} The CASA, in reports filed with the trial court on March 16, 2007, and March 19, 2007, again recommended that Destanie remain in appellee's care and custody and that the visitation between Destanie and appellant continue.
 {¶ 9} Hearings were held before the trial court on March 19, 2007, and March 20, 2007, on the motions filed by both parties. The trial court took the matter under advisement and ordered counsel for the parties to brief the applicable law.
 {¶ 10} Pursuant to a Journal Entry filed on April 30, 2007, the trial court ordered that appellee was the residential and legal custodian of Destanie Ritterbeck and granted appellant and Amanda Ritterbeck parenting time. The trial court, in its Journal Entry, stated, in relevant part, as follows in its "Conclusions of Law":
 {¶ 11} "1. This Court's entry of February 4, 1999, did not contain a designation as to whether it was awarding temporary or legal custody to the grandfather. This Court will consider it as though the grant was of temporary custody;[1] the least restrictive type. . . .
 {¶ 12} "3. Parental unsuitability is determined by a preponderance of the evidence showing that the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child. Id. pg 243. *Page 5 
 {¶ 13} "4. At the time of the initial custody award in 1999 the father had abandoned the child in that he had no contact with the child for 90 days prior to the award. At the time of the initial custody award the father, by his own admission, was 19 years of age and was unable to care for the child. The father paid no support until February, 2003. Neither parent was able to care for the child and awarding custody to either parent would have been detrimental to the child.
 {¶ 14} "5. This Court having found the parents unsuitable at the time of the initial award of custody will now consider whether or not there has been a change of circumstances in the child and whether or not the best interest of the child would dictate a change of custody, and if so, whether or not the benefits of the change would be outweighed by the detriment to the child.
 {¶ 15} "6. The child's circumstances had not changed appreciably as first noticed by the father when he filed for custody. The child's environment was not as observed in the `snapshot' seen by the father.
 {¶ 16} "7. This Court has found in the past that time and maturity can change a child. This child is maturing and it was her initiative to get to know her parents that set this case in motion. She will continue to need all of the parties love, attention, and energy.
 {¶ 17} "8. This Court cannot find that the benefits from a change of custody would be outweighed by the benefits from no change."
 {¶ 18} Appellant now appeals from the trial court's April 30, 2007, Judgment Entry raising the following assignments of error on appeal: *Page 6 
 {¶ 19} "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN AWARDING LEGAL CUSTODY TO APPELLEE IN 2007 WITHOUT MAKING THE REQUIRED FINDING THAT APPELLANT WAS AN UNSUITABLE PARENT IN 2007.
 {¶ 20} "II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN AWARDING LEGAL CUSTODY TO A NON-PARENT IN 2007, BASED SOLELY UPON AN UNSUPPORTED FINDING THAT APPELLANT HAD ABANDONED HIS CHILD IN 1999."
 I, II {¶ 21} Appellant, in his two assignments of error, challenges the trial court's award of legal custody of Destanie to appellee. Appellant specifically contends that the trial court erred in awarding custody to appellee in 2007 because it did not make the required finding that appellant was an unsuitable parent in 2007. Appellant further contends that the trial court's decision was based solely on an unsupported finding that appellant had abandoned Destanie in 1999.
 {¶ 22} R.C. 2151.23 gives juvenile courts exclusive jurisdiction to "determine the custody of any child not a ward of another court of this state." The Ohio Supreme Court addressed the issue of when a trial court may award custody of a child such as Destanie to a nonparent in In rePerales (1977), 52 Ohio St.2d 89, 369 N.E.2d 1047. In Perales, the Supreme Court held as follows: "In [a] child custody proceeding between a parent and a nonparent, the hearing officer may not award custody to the nonparent without first making a finding of parental unsuitability-that is, without first determining that a preponderance of the evidence shows that the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become *Page 7 
totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child." Id. at syllabus.
 {¶ 23} The paramount right of a parent to custody can be forfeited by demonstrating unsuitability by a preponderance of the evidence. In Re:Porter (1996), 113 Ohio App.3d 580, 588, 681 N.E.2d 954. Once the paramount right to custody is forfeited, the court will look to the best interest of the child when determining custody. Id.
 {¶ 24} Appellant, in the case sub judice, contends that the trial court erred in awarding legal custody to appellee in 2007 without making the required finding that appellant was an unsuitable parent in 2007. Appellant argues that when the trial court issued its February 4, 1999, Entry granting custody of Destanie to appellee, the trial court did not make a finding that appellant had abandoned Destanie and that a different trial court judge, in 2007, amended such Entry by including a finding that appellant had abandoned Destanie.
 {¶ 25} Appellant, in arguing that the trial court erred in awarding legal custody to appellee without making an unsuitability determination as of 2007, cites to In re Hockstok, 98 Ohio St.3d 238, 2002-Ohio-7208,781 N.E.2d 971. In Hockstok, the appellee, Jennifer Gorslene, filed a complaint in the juvenile court in July of 1994 to establish her child's paternity. Paternity was established and the court designated the appellee as the child's residential parent.
 {¶ 26} Soon thereafter, the appellee's father and stepmother, the Hockstoks, filed a motion asking to be made parties to the action so that they could assert custodial rights to the child. The court granted the Hockstoks' motion and found that it was in the *Page 8 
child's best interest to grant temporary custody to them. The appellee and the Hockstoks subsequently entered into an agreement on April 9, 1996, pursuant to which the Hockstoks assumed temporary custody of the child for six months to give the appellee time to create a stable living environment for her child. When the six months expired, the parties agreed to extend the period of temporary custody for another six months.
 {¶ 27} However, in January of 1997, prior to the expiration of the six-month period, the appellee filed a motion to terminate the Hockstoks' temporary custody and regain custody of her child. Such motion was denied. The Hockstoks then filed a motion requesting legal custody of the child. The matter proceeded to a hearing before a magistrate on the appellee's motion for custody and the Hockstok's cross-motion for legal custody. The court adopted the magistrate's decision, applying the best-interest test and granting the Hockstoks legal custody of the child. The appellee did not appeal this decision.
 {¶ 28} Ten months later, the appellee filed a motion for the reallocation of parental rights. The magistrate again applied the best-interest test in recommending that such motion be denied. The appellee then objected, arguing that the magistrate was first required to determine whether she was a suitable parent. The trial court, in adopting the magistrate's decision, denied the appellee's motion. The appellee then appealed. The Court of Appeals reversed and remanded, holding that the trial court had erred when it failed to make a parental unsuitability determination.
 {¶ 29} The matter was appealed to the Ohio Supreme Court. The Ohio Supreme Court, in Hockstok, held that in a child custody case arising from a parentage action *Page 9 
between a parent and a nonparent, the trial court must make a parental-unsuitability determination on the record before awarding the child's legal custody to a nonparent. Id. at the syllabus. While the Hockstok's had argued that, based on the appellee's failure to appeal the February 4, 1998, entry awarding legal custody of the minor child to the them, there was a constructive unsuitability determination and the trial court did not err when it applied the "best interest of the child" standard to the appellee's motion to modify the legal custody order, the Ohio Supreme Court disagreed.
 {¶ 30} In rejecting such a theory, the Ohio Supreme Court, inHockstok, stated, in relevant part, as follows: "The only remaining question to be settled, therefore, is how can a party who did not appeal a final order subsequently petition the court for a modification, when the modification motion raises essentially the same issues that would have been raised during the waived appeal? Unlike most areas of the law where permanency of final orders is a paramount principle, in child custody law, flexibility is often an overriding concern. Such flexibility is codified in R.C. 2151.011(B)(19), which defines the term "legal custody" as "a legal status that vests in the custodian the right to have physical care and control of the child * * * subject to any residual parental rights, privileges, and responsibilities." (Emphasis added.) This definition of legal custody is statutory codification of the principle that in child custody, permanency of final orders is not always of the highest priority." Id at paragraph 35. The Ohio Supreme Court agreed with the Court of Appeals that the matter had to be remanded for an unsuitability determination.
 {¶ 31} In contrast to Hockstok, there was an unsuitability determination in this case. The trial court, in its April 30, 2007 Journal Entry, found that appellant was *Page 10 
unsuitable at the time of the initial award of custody in 1999. While appellant contends that the trial court had to make a finding that he was an unsuitable parent in 2007, we disagree. In Hockstok, supra, the Ohio Supreme Court, after finding that the trial court had failed to make an unsuitability determination, remanded the case for a parental unsuitability determination. The Ohio Supreme Court in theHockstok case was not specific as to whether the trial court in that case, on remand, could have considered evidence about the suitability of the parents prior to the custody award to the Hockstoks or whether the trial court could only have considered evidence about the suitability of the parent as of the time she filed her motion for reallocation of parental rights ten months later.
 {¶ 32} Therefore, we must determine whether it was appropriate in the case sub judice for the trial court to consider evidence of parental suitability as of the time it issued its 1999 Judgment Entry or whether the court was limited to only considering evidence of parental suitability as of the 2007 Judgment Entry granting custody to a non-parent.
 {¶ 33} We find that the trial court did not err in considering evidence of parental suitability as of the 1999 Judgment Entry. We base that determination on the language from paragraph 35 in theHockstok opinion which states: "The only remaining question to be settled, therefore, is how can a party who did not appeal a final order subsequently petition the court for a modification, when the modification motion raises essentially the same issues that would have been raised during the waived appeal? Unlike most areas of the law where permanency of final orders is a paramount principle, in child custody law, flexibility is often an overriding concern. . . ." *Page 11 
 {¶ 34} The Ohio Supreme Court in Hockstok seems to say that it's never too late for a parent to challenge a prior custody order to a non-parent when the prior custody order did not contain a specific finding on the record that the parent(s) were unsuitable. Fundamental fairness requires that if it is never too late for this type of challenge to be made by the parent, it is never too late for the non-parent to prove that the parent(s) were unsuitable at the time of the grant of custody to the non-parent. Parents have a fundamental right to parent their children, but the children's rights can not be totally disregarded.
 {¶ 35} It should also be noted that, in the case sub judice, the trial court determined that the prior order of custody to the non-parent was an order of temporary custody, and, thus, not a final order of custody. Therefore, technically, the original motion for custody filed by the non-parent was still pending, and the trial court did not abuse its discretion in hearing evidence from the time that motion was filed.
 {¶ 36} Moreover, we note that the trial court, in its April 30, 2007 Judgment Entry, stated, in relevant part, as follows: "At the time of the initial custody award the father [appellant], by his ownadmission, was 19 years of age and was unable to care for the child." (Emphasis added).
 {¶ 37} However, there is no transcript of the hearing before the trial court on March 19th and 20th 2007, on appellant's motion requesting a modification of custody. Absent a transcript, we must presume regularity in the proceedings in the trial court. Knapp v. Edwards Laboratory (1980), 61 Ohio St.2d 197,400 N.E.2d 384. We must, therefore, presume that the trial court was correct in finding that appellant admitted that he was an unsuitable parent in 1999. Appellant has therefore, waived his right to *Page 12 
challenge such finding. See In re Bell, Noble App. No. 04 NO 321,2005-Ohio-6603 in which the court held in relevant part, as follows: "Appellant has actively, not constructively, waived her right to clarify the record concerning the parental unsuitability. At the July 23, 2004, custody hearing, Appellant's attorney actually discussed In rePerales, but never asked for a suitability determination. In fact, the attorney conceded that Appellant was not a suitable parent at the time her mother was granted legal custody in 1992." Id at paragraph 49.
 {¶ 38} Appellant also argues that his fundamental parental right of due process was violated when the trial court, sua sponte, amended findings made by a previous fact-finder eight years ago. For the reasons stated previously, we disagree. In addition, the appellant does not claim that he was taken by surprise and was, therefore, unprepared to defend against the claim that he was unsuitable eight years ago. Even if he had made that claim, he could not demonstrate that he was taken by surprise, because there was no transcript of the hearing.
 {¶ 39} Based on the foregoing, we find that the trial court did not err in granting custody of Destanie to appellee. *Page 13 
 {¶ 40} Appellant's two assignments of error are, therefore, overruled.
 {¶ 41} Accordingly, the judgment of the Guernsey County Court of Common Pleas, Juvenile Division, is affirmed.
 Edwards, J. Hoffman, P.J. and Gwin, J. concur. *Page 14 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Guernsey County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to appellant.
[1] Although the trial court indicated that it was treating the 1999 grant of custody as a grant of temporary custody, the trial court seem to treat the same as a grant of legal custody. Legal custody "is defined by R.C. 2151.011(B)(19) as "a legal status that vests in the custodian the right to have physical care and control of the child and to determine where the child shall live and the right and duty to protect, train and discipline a child and to provide the child with food, shelter, education and medical care, all subject to residual parental rights, privileges and responsibilities." As will be made clear in our analysis, our disposition of this case is the same whether the 1999 grant of custody was temporary or legal. *Page 1