THRASHER, APPELLEE, *v.*
THRASHER, APPELLANT.

(No. 9961—Decided September 2, 1981.)

*Ms. Paula Hopkins,* for appellee.
*Mr. Arthur Axner,* for appellant.

MAHONEY, P. J. This case arose from the application of appellant, Randall Thrasher, for an order changing custody of his child, Randall Thrasher, III, from the child's mother, Janet Thrasher, appellee herein, to the child's paternal grandparents. The Juvenile Division of the Court of Common Pleas of Summit County denied the application and ordered that custody remain with the mother. We affirm.

### Facts

The parties were divorced on November 2, 1978. The court awarded custody of their minor child, Randall Thrasher, III, to the mother. There is conflicting evidence but it appears that after the divorce, the parties continued to live together, off and on, for a few months.

Subsequently, Mrs. Thrasher entered into a relationship with a man named Russell Nixon. While she admits to having sexual relations with Nixon, she claims that they never engaged in such activity while the children were present and that Nixon never shared her bedroom overnight. Appellant intimates, but appellee denies, that there were others with whom Mrs. Thrasher was sexually involved.

While in the custody of Mrs. Thrasher, Randy obtained several minor injuries including a cut on the head, burns to the arm, and an injury which required placing his arm in a cast. For each of the incidents, Mrs. Thrasher has provided an explanation.

On May 8, 1978, the parties' relationship erupted into physical violence upon each other. The evidence is conflicting but the result was that Mrs. Thrasher needed six stitches to close a wound. It appears that Mr. Thrasher forcefully took possession of Randy and after taking him, delivered him to Robert and Violet Good, who are Randy's paternal grandparents.

While in the Goods' home, Randy continued to suffer minor injuries including a burn and a large bruise to the head. Once again, explanations were provided for each of the injuries.

Throughout all pertinent times, Mrs. Thrasher has been receiving assistance from Akron Child Guidance in improving her parenting skills.

On April 1, 1980, Mr. Thrasher filed a motion for the court to change custody of Randy from Mrs. Thrasher to Mr. and Mrs. Good. The Summit County Domestic Relations Court certified the matter to the juvenile court. The juvenile court held hearings on September 19 and 25, 1980. On November 7, 1980, the court entered judgment denying the motion.

### Assignments of Error

"1. The trial court abused its discretion by overruling the appellant-father's motion for a change of custody from the appellee-mother to the paternal grandparents because the manifest weight of the evidence established a change of conditions since the entry of the judgment entry of divorce adversely affected the health, well-being and best interests of the minor child.

"A. A modification of the order of custody contained in the judgment entry of divorce is required to promote the best interests of the child.

"2. The decision of the court finding that the child's best interests would best be served by not modifying the original custody order was against the manifest weight of the evidence.

"A. Evidence produced at trial demonstrated the environment of Randall Thrasher, III, significantly endangered his physical health, and his mental, moral, and emotional development and that this, therefore, constituted a change in cir-

cumstances occurring since the entry of the original custody order.

"B. The standard in Ohio is that if immoral conduct of the custodial parent is shown to have a direct or probable adverse impact on the child, a change of custody is justified: and this was established by the manifest weight of the evidence."

### Discussion of Law

### I

The law concerning child custody has had many changes throughout the years and it would be beneficial to review the progression of the law. The area of major concern is the standard of law to be applied in a custody dispute between one or both parents and a third party. Of specific import is whether the parents must be found to be unsuitable or unfit before custody will be granted to a non-parent, or if all that need be shown is that custody to the parent(s) is not in the best interests of the child.

As early as 1855, the Supreme Court of Ohio established that the welfare of a child will be the paramount concern in a custody case. In a dispute between parents, the court stated that "* * * neither of the parties has any rights that can be made to conflict with the welfare of the child, * * * the order of the court should be made with a single reference to its best interests. * * *." *Gishwiler* v. *Dodez* (1855), 4 Ohio St. 615, 617. Later, in 1877, the Supreme Court decided a controversy between a parent and non-parents in *Clark* v. *Bayer* (1877), 32 Ohio St. 299. There the court recognized that the welfare of the child is the first concern. But parents who are "suitable" have a "paramount" right to the custody of their child unless they forfeit that right or become totally unable to care for and support the child. Thus, although the best interests of the child are the first consideration, the court recognized the rights of suitable parents.

This result was codified in G.C. 8033, passed April 14, 1893, which provided:

"* * * If * * * it should be proved that both parents are *improper persons* to have the care, custody and control of their children, in its discretion, the court may either designate some reputable and discreet person to take charge thereof, or commit them to a county or district children's home * * *." (Emphasis added.)

This statute was amended in 1951 to provide that if "* * * neither parent is a *suitable person* to have custody * * * [the court] may commit the child to a relative of the child * * *." (Emphasis added.) This is the same language that was used in R.C. 3109.04 when the Ohio Revised Code was adopted. With these statutes the legislature codified the presumption in favor of suitable parents in custody disputes with non-parents.

The Supreme Court construed this version of R.C. 3109.04 strictly, mandating that custody remain with the parent so long as he or she is suitable, even though the best interests of the child might indicate that custody be placed elsewhere. For example, in *Grandon* v. *Grandon* (1955), 164 Ohio St. 234 [57 O.O. 462], the court was concerned with a dispute between the mother and the grandmother of the child. The court held that by reason of R.C. 3109.04, the common pleas court had no authority to change legal custody from the mother to the grandmother where the court did not find that the mother was not a suitable person to have custody. In the syllabus the court stated that:

"* * * In such instance, there is no such authority, notwithstanding that such court determines that the mother is not as suitable a person to have such custody as is the grandmother and determines that, by changing such custody to the grandmother, 'the general welfare and best interests of the child would be best suited.'"

In a much later case the court ruled that under R.C. 3109.04 the common pleas court has "no authority" to grant

custody to a grandmother unless it first finds that "* * * 'neither parent is a suitable person to have custody' * * *." *Baxter* v. *Baxter* (1971), 27 Ohio St. 2d 168 [56 O.O.2d 104], paragraph one of the syllabus.

Thus, under this version of R.C. 3109.04 and cases construing it, the suitability of the parents became the major test, even if custody with the parents was not necessarily in the best interests of the child.

In 1974, the legislature amended R.C. 3109.04 and substituted a "best interests" test for the old "suitability" one. The new statute reads in pertinent part:

"* * * If the court finds, with respect to any child under eighteen years of age, *that custody to neither parent is in the best interest of the child,* it may commit the child to a relative of the child or certify a copy of its findings, * * * to the juvenile court for further proceedings * * *." (Emphasis added.)

The new statute was construed by the Supreme Court in *Boyer* v. *Boyer* (1976), 46 Ohio St. 2d 83 [75 O.O.2d 156]. Once again, the dispute was between the parents and the grandparents of the child. The court affirmed the judgment of the trial court granting custody to the grandparents even though the parents of the child were not found to be unsuitable. The court held in the first paragraph of the syllabus:

"In determining who shall have the care, custody, and control of a child under 18 years of age, *even though the child's parents are not found to be unfit or unsuitable,* the court may commit the child to a relative of the child where the court finds that custody to neither parent is in the best interest of the child." (Emphasis added.)

Thus, as a result of the change of language in R.C. 3109.04, the test in determining custody took a drastic shift from a total "suitability" test to a total "best interests" test.

In 1977, with *In re Perales* (1977), 52 Ohio St. 2d 89 [6 O.O.3d 293], the Supreme Court began a swing back toward the center combining the suitability and best interests tests. In *Perales, supra,* the dispute arose in the juvenile court under R.C. 2151.23(A)(2) rather than in the domestic relations court under R.C. 3109.04. The court began by distinguishing the two statutes. It stated that in R.C. 3109.04 disputes the parties are usually the opposing parents. Since the parents may both be qualified to raise the child, the court need only look to the best interests of the child and not to the suitability of the parents. On the other hand, the court noted that in disputes between a parent and non-parent under R.C. 2151.23, the scope of inquiry must be broader. In such a dispute the court must look to the suitability of the parent. Although this was an attempt to distinguish the statutes, we feel the effect of the decision was to modify the construction of the best interests test which is used in R.C. 3109.04.

Clearly the best interests test of R.C. 3109.04 was not meant to apply only to disputes between parents as *Perales* indicates. The language of the statute itself states that if granting custody to neither parent is in the best interests of the child, the court may grant custody to another relative. In *Boyer* v. *Boyer, supra,* where the Supreme Court construed R.C. 3109.04 to require only a best interests test, the dispute was between a parent and a non-parent. It is evident that there may be disputes between parents and non-parents under either R.C. 3109.04 or 2151.23, and it would be inconsistent and unwise to have two distinct substantive law tests, one for each statute. In fact, as the dissent in *Perales* notes, R.C. 2151.23 is merely a jurisdictional statute which does not have a substantive law test attached to it. Thus, by re-introducing the suitability test the court in effect modified *Boyer, supra,* and its construction of R.C. 3109.04.

The *Perales* court reverted to *Clark* v. *Bayer, supra,* which stated that the welfare of the child is the first consideration but suitable parents have a paramount right to the custody of their children. The court noted that in the past the best interests of the child and the rights of suitable parents were often competing interests when not in harmony. The court handled this competition by defining "suitability" in terms of the best interests of the child. A parent is unsuitable when "* * * a preponderance of the evidence indicates abandonment, contractual relinquishment of custody, total inability to provide care or support, or that the parent is *otherwise unsuitable — that is, that an award of custody would be detrimental to the child."* (Emphasis added.) *Perales, supra,* at 98.

This test is similar to that in *Grandon* v. *Grandon, supra.* In that case the court stated that if the parent is suitable the court may not grant custody to a non-parent even though the non-parent may be more suitable. A pure "best interests" test looks totally to the best situation available to the child and places him there. The *Perales* test, however, requires that some detriment to the child be shown before he is taken away from an otherwise suitable parent. This is based on the assumption that it is in the best interests of the child to live with his parent(s). The court seems to recognize that it is very dangerous for the judiciary to weigh and compare various living situations to determine which might be "best" for a child. Rather the court should not interfere with a parent-child relationship unless some detriment to the child is shown. Thus, by the *Perales* test, the best interests of the child are served by maintaining the family structure as much as possible. The "natural" right in a parent to raise his or her child is also protected. (See *Meyer* v. *Nebraska* [1923], 262 U.S. 390, where the United States Supreme Court construed the Fourteenth Amendment as giving due process protection to parental rights.) But

if granting custody to the parent is detrimental to the child, the court is still free to grant custody to a non-parent.

The Supreme Court has not disturbed its decision in *Perales* and, therefore, the state of the law in Ohio is that suitable parents have a paramount right to custody of their children so long as such custody is not detrimental to the child. Although the court applied this test to an R.C. 2151.23 action in the juvenile court, we believe that the test should also apply in disputes brought under R.C. 3109.04.

II

Appellant's arguments are essentially that the juvenile court abused its discretion and that its decision was against the manifest weight of the evidence. We disagree.

The discretion of the trial court in custody disputes has been well settled in Ohio. In *Trickey* v. *Trickey* (1952), 158 Ohio St. 9, 13 [47 O.O. 481], the Supreme Court stated:

"In proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important. The knowledge obtained through contact with the observation of the parties and through independent investigation cannot be conveyed to a reviewing court by printed record. * * *"

The Supreme Court has also ruled that if a judgment is supported by some competent, credible evidence the appellate court will not reverse it as being against the manifest weight of the evidence. *C. E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261]. In *Baxter* v. *Baxter, supra,* at page 173, Justice Leach said:

"* * * Abuse of discretion connotes something more than merely being against the manifest weight of the evidence. * * *"

Thus, in custody matters, the trial court has broad discretion and the authority of the appellate court to reverse

a decision as being against the manifest weight of the evidence is severely limited. With this in mind we now turn to the facts of this case.

In order to modify a prior custody decree the trial court must find that a change of circumstances has occurred in either the child or his custodian, and that the modification is necessary to serve the best interests of the child. R.C. 3109.04(B). According to R.C. 3109.04(B), the court shall retain the previous custodian unless:

"(1) The custodian agrees to a change in custody.

"(2) The child, with the consent of the custodian, has been integrated into the family of the person seeking custody.

"(3) The child's present environment endangers significantly his physical health or his mental, moral, or emotional development and the harm likely to be caused by a change of environment is outweighed by the advantages of such change to the child."

All parties agree that the first two conditions above do not apply to this case, thus, our concern is with the third. The trial court found that the child's present environment did not create the type of danger as stated in R.C. 3109.04(B)(3). Our task is to determine if this finding is supported by credible, competent evidence. We hold that it is.

Appellant's main contention is that Randy Thrasher was in some way physically abused by the appellee or others close to appellee. Yet, he provided no evidence other than the injuries themselves and speculation as to their causes. For each allegation, appellee had an explanation describing the accidental nature of the injury. This evidence cannot be ignored.

Appellant also maintains that appellee's sexual activity had a negative effect on the morals of Randy. Once again, appellee offered evidence that any sexual encounter was out of the presence of the children and, contrary to appellant's claims, she only had sexual relations with one man not her husband.

Appellant argues that appellee's sexual activity constituted immoral conduct making her an unsuitable parent. However, the Supreme Court has stated in footnote 12, in *Perales, supra,* at 99, that it does not "* * * intend a finding of unsuitability to connote only some moral or character weakness; instead, it is designed to indicate that contractual relinquishment of custody, abandonment, complete inability to provide care or support, or that parental custody would be detrimental to the child, has been proved by a preponderance of the evidence."

Appellant failed to show at trial this type of unsuitability.

Other evidence supporting the trial court's conclusion includes evidence that Randy also received injuries in the home of Mr. and Mrs. Good. Thus, as far as Randy's physical well being is concerned, it is not clear that there would be any advantage to living with the Goods. The evidence also reveals that appellee has been attending child guidance sessions to improve her parenting abilities. In its decision the trial court strongly recommended that she continue attending the sessions, a recommendation with which we heartily concur.

## Summary

On the whole, we cannot find that the decision of the trial court was not supported by credible evidence or that its discretion was abused. Therefore, the judgment is affirmed.

*Judgment affirmed.*

QUILLIN and HUNSICKER, JJ., concur.

HUNSICKER, J., retired, of the Ninth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.