[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
OPINION
Davina Vreeland appeals the judgment and order of the juvenile court of Seneca county granting custody of Joshua W. Holycross to Heather Barringer.
Appellant Davina Vreeland is the mother of Joshua Holycross, aged eight. Although Joshua has occasionally lived with appellant, for most of his life he has resided with various relatives of appellant. Among others, Joshua has lived with appellee Heather Barringer (appellant's ex-sister-in-law and Joshua's aunt) and her husband Robert on and off for several years.
On November 28, 1995, appellant and the Barringers entered into a "Custody Agreement" which purported to place Joshua in the "care, custody and control" of the Barringers for a period of one year, until November 27, 1996. The agreement designated the Barringers as Joshua's "legal custodians" and also contained the following clause:
 The parent and legal custodians acknowledge that their goal is to permit an adoption of Joshua by the legal custodians at the termination of this Agreement.
On May 27, 1997, approximately eighteen months later, appellant and the Barringers entered into another one-year "Custody Agreement" similar to the first. The second document also contained the "goal is adoption" clause. Although the record is somewhat unclear, Joshua apparently resided with the Barringers for about two and one-half years, from April, 1995 to January, 1998. Appellant had "visitation" with Joshua at irregular intervals during this period.
In January 1998, appellant retrieved Joshua from the Barringers, and Joshua lived with appellant for nearly four months. However, on April 15, 1998 appellee Heather Barringer filed a petition to be granted custody of Joshua in the juvenile court of Seneca county, pursuant to R.C. 2151.23(A)(2). Mrs. Barringer alleged that appellant was incapable of providing proper care or proper medical treatment for Joshua, that appellant had contractually relinquished custody of Joshua, and that Joshua's best interests would be served if Mrs. Barringer were designated Joshua's residential parent. Mrs. Barringer also requested temporary custody of Joshua during the pendency of the case. The trial court granted Mrs. Barringer's request for temporary custody on May 11, 1998, and a permanent custody hearing was scheduled for August 13.
On September 23, the trial court issued an opinion in which it found appellant to be unfit to raise Joshua:
 The Court finds that the petitioners have demonstrated by a preponderance of the evidence that Davina Vreeland has contractually relinquished custody, has abandoned Joshua Holycross and has demonstrated a total inability to provide the care or support for her special needs child.
The court expressed the opinion that "it would be in the best interest of the child to live with and be placed in the custody of Heather and Robert Barringer * * *" and granted Mrs. Barringer's motion. Appellant asserts five errors with the court's judgment.
 The Trial Court erred when it found that neither side contested the fact that Davina Vreeland signed two agreements giving Robert and Heather Barringer custody of Joshua Holycross with the intent being adoption.
 The Trial Court erred when it found by a preponderance of the evidence that Davina Vreeland had contractually relinquished custody of Joshua Holycross to Robert and Heather Barringer.
 The Trial Court erred when it found by a preponderance of the evidence that Davina Vreeland had abandoned Joshua Holycross.
 The Trial Court erred when it found by a preponderance of the evidence that Davina Vreeland demonstrated a total inability to provide care or support for Joshua Holycross.
 The Trial Court erred when it found that it would be in the best interest of Joshua Holycross to live with and be placed in the legal custody of Robert and Heather Barringer.
Generally, juvenile court custody disputes between parents and nonparents are governed by the Ohio Supreme Court's decision in In Re Perales (1977), 52 Ohio St.2d 89:
 In * * * [a juvenile court] child custody proceeding between a parent and a nonparent, the hearing officer may not award custody to the nonparent without first making a finding of parental unsuitability that is, without first determining that a preponderance of the evidence shows that the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child.
 Id. at syllabus. This court has previously recognized a distinction between the Perales test and the "best interest of the child" test enunciated in R.C. 3109.04.[1]
 A pure best interest test looks to the best custodial situation available for the child and then places the child there. Under Perales, parental custody is presumed to be in the best interests of the child unless it can be shown that placement with a parent will be detrimental to the child.
 In Re Porter (1996), 113 Ohio App.3d 580, 589. Thus, underPerales, "suitable" parents have the paramount right to the custody of their minor children, "unless they forfeit that right by contract, abandonment, or by becoming totally unable to care for and support those children." In Re Perales,52 Ohio St. at 97.
In this case, the trial court found that "the mother is unfit to raise the child for a number of reasons." Appellant's first four assignments of error challenge the court's "reasons" for finding her unfit and thus assert deficiencies with the trial court's factual findings. We review all of the trial court's factual findings under the same standard. A trial court's determination that a parent has forfeited his or her paramount right to custody is a factual determination that will not be reversed by a reviewing court if it is supported by some reliable, credible evidence. See Masitto v. Masitto (1986), 22 Ohio St.3d 63,66; Reynolds v. Goll (1996), 75 Ohio St.3d 121, 124; Cf.Houser v. Houser (Aug. 31, 1998), Mercer App. No. 10-98-7, unreported.
Appellant's first and second assignments of error argue that she signed the agreements giving the Barringers custody of Joshua under duress, and that in any event the contracts were for periods of limited duration. Appellant argues that the evidence established that she signed the first custody contract because a car accident had left her incapable of caring for Joshua during her recovery, and signed the second one because the Barringers threatened to prevent her from seeing Joshua if she did not sign. Appellant reasons that this evidence, together with the fact that the contracts were each for the limited period of one year, indicate that she never contractually relinquished her paramount right to custody of Joshua.
While the evidence is certainly susceptible to appellant's interpretation, it is undisputed that appellant did sign the two agreements, and other testimony considered by the court supports the trial court's finding that appellant "was satisfied when she left and there was no duress or pressure used for her to sign." Because the trial court's findings on these issues are supported by competent, credible evidence, we will not disturb them on appeal. Appellant's first and second assignments of error are overruled.
Appellant's third assignment or error argues that evidence does not establish that she abandoned Joshua. Appellant argues that the evidence actually demonstrates that she was in "constant contact" with Joshua and that there was no testimony presented that she abandoned Joshua. While appellant correctly observes that no one used the word "abandoned," we observe that the trial court placed great emphasis on its conclusion that appellant was not actively involved in Joshua's life:
 [S]he is unable to discipline and has not shown sufficient interest in this child so he can mature even minimally under her care. * * * [T]he exhibits and testimony given as far as the contracts that Davina made would certainly indicate that she was contractually trying to relinquish custody of the child or abandon the child.
In addition to the agreements made with Robert and Heather Barringer, appellant at one point also contractually relinquished custody of Joshua to her father. There was evidence presented that appellant believed that her father was abusing Joshua, but took no action. Appellee Heather Barringer eventually acted to remove Joshua from appellant's father's custody. The record provides competent, credible evidence to support the trial court's conclusion that appellant had abandoned Joshua, and therefore we cannot say that conclusion was an abuse of the trial court's discretion. Appellant's third assignment of error is overruled.
Appellant's fourth assignment of error argues that there is insufficient evidence to support the trial court's finding that appellant demonstrated "a total inability to provide care or support" for Joshua. Appellant points to several witnesses who testified that her care of Joshua was adequate. However, our review of the record shows that other witnesses testified that appellant ignored Joshua, did not participate in his education, verbally abused him, asked other people (including the Barringers) to discipline Joshua for her, and continually attempted to get other people to take care of Joshua. This testimony provides a competent and credible basis for the trial court's finding. Appellant's fourth assignment of error is overruled.
Taken together, our analysis of appellant's first four assignments of error compel the conclusion that the trial court's decision that appellant Davina Vreeland is an "unsuitable" parent under Perales was not an abuse of discretion. Therefore, it was proper for the court to apply the best interest test to modify custody.
Appellant's fifth and final assignment of error argues that the trial court abused its' discretion by concluding that it was in Joshua's best interest to award custody to appellee. The trial court heard testimony demonstrating that Joshua is a special needs child who requires firm discipline and strong involvement, and a consistent home life. Joshua's school principal indicated that Joshua is developmentally far behind other children his age and can only be productive in school less than half of a day. Undoubtedly, these concerns were in the trial court's mind when it awarded custody to appellee:
 The Court finds that Barringers [sic] have been active with the school and are working with the school to ensure that this child has an education for life. The Court finds that the Barringers have provided a stable life and stable routine for the child in which to live and that they have provided proper discipline for a child with special needs.
Moreover, the trial court also considered appellant's unsuitability and evidence of her failure to participate in Joshua's education in reaching its conclusion. The record provides ample support for that conclusion, and therefore the trial court did not abuse its discretion by determining that it was in Joshua's best interest to award custody to appellee.
For the foregoing reasons, appellant's five assignments of error are overruled, and the judgment of the juvenile court of Seneca county is affirmed.
BRYANT, P.J. and WALTERS, J., concur.
[1] R.C. 3109.04(D)(2) reads:
 If the court finds, with respect to any child under eighteen years of age, that it is in the best interest of the child for neither parent to be designated the residential parent and legal custodian of the child, it may commit the child to a relative of the child or certify a copy of its findings, together with as much of the record and the further information, in narrative form or otherwise, that it considers necessary or as the juvenile court requests, to the juvenile court for further proceedings. (emphasis added).
We observe that there may appear to be a conflict between the Perales
test and the plain language of R.C. 3109.04(D)(2). Perales, like the instant case, was a juvenile court proceeding brought pursuant to R.C.2151.23(A)(3) rather than R.C. 3109.04. However, in In Re Dunn (1992),79 Ohio App.3d 268, 270-71, this court recognized that the Perales
unsuitability requirement must be applied cases arising under R.C.3109.04(D)(2). See Thrasher v. Thrasher (1981), 3 Ohio App.3d 210;In Re Zeedyk (Nov. 30, 1998), Defiance App. No. 4-87-5, unreported. Thus, the Perales standard is now applied in all original custody determinations between parents and nonparents, whether arising under R.C. 3109.04(D)(2) or R.C. 2151.23(A)(3). The Perales case has no effect on the "best interest" test applied in other factual situations covered by different subsections of R.C. 3109.04.