As early as 1855, the Ohio Supreme Court recognized that custody determinations should be made with a "single reference" to the child's best interest. Gishwiler v. Dodez (1855), 4 Ohio St. 615, 617. However, it also later recognized that a "suitable" parent's right to the custody of his or her child "is paramount to that of all other persons" when deciding a dispute between a parent and a nonparent. Clark v. Bayer
(1877), 32 Ohio St. 299, paragraph one of the syllabus. Notwithstanding the child's best interest as addressed in Gishwiler, the Clark court appreciated a natural parent's common law right to raise and care for his or her own child.
Prior to 1974, statutory law was in accord. R.C. 3109.04 mandated that upon a finding that neither parent was suitable to have custody, a court could grant custody of a minor child to another relative. However, in 1974, the General Assembly amended R.C. 3109.04 to allow a court to grant custody to another relative if the court finds that custody to neither parent is in the best interest of the child. Specifically, under R.C.3109.04(D)(2):
 "If the court finds, with respect to any child under eighteen years of age, that it is in the best interest of the child for neither parent to be designated the residential parent and legal custodian of the child, it may commit the child to a relative of the child or certify a copy of its findings, together with as much of the record and the further information, in narrative form or otherwise, that it considers necessary or as the juvenile court requests, to the juvenile court for further proceedings, and, upon the certification, the juvenile court has exclusive jurisdiction."
The Supreme Court of Ohio interpreted this provision in Boyer v. Boyer
(1976), 46 Ohio St.2d 83, paragraph one of the syllabus. In that case, the natural mother of a child sought custody of him in a divorce action.Id. at 84. The child, however, had lived with his paternal grandparents since shortly after his birth, and was six years-old at the time of the divorce. Id. at 83-84. The grandparents sought to retain custody, and the child's father supported their claim. After finding that the best interest of the child supported his remaining with the grandparents, the domestic relations court granted them custody. On appeal, the Supreme Court affirmed the judgment of the trial court. Id. at 87.
The mother in Boyer argued that the domestic relations court had erred in granting custody to a non-parent without first finding that his natural parents were unsuitable. Id. at 85-86. The Supreme Court held, to the contrary, that R.C. 3109.04 expressly permitted the trial court to award custody to a relative upon a finding that it was in the child's best interest. Id. at paragraph one of the syllabus. The court stated, "The General Assembly has [with R.C. 3109.04] granted to children the right to be placed with the relative whose custodianship would be in the child's best interest." Id. at 86. The court also expressed the view that "the child's right to a suitable custodian and parental rights, when not in harmony, are competing interests, requiring that one give way to the other." Id. at 87. Because the General Assembly had acted in support of the child's rights, those rights prevailed. See id. at 86-87.
In Boyer, the Supreme Court applied a best-interest analysis adopted by statutory enactment in domestic relations cases. A different, common-law standard applies, however, in proceedings between parents and non-parents for which the legislature has not expressly embraced the best-interest analysis. The common-law standard was announced by the Ohio Supreme Court in In re Perales (1977), 52 Ohio St.2d 89, syllabus.
Perales involved a child custody action arising in the juvenile court under R.C. 2151.23, instead of the domestic relations court under R.C.3109.04. Id. at 90. The mother in Perales sought to regain custody of the daughter she had given up approximately two years earlier when she signed an agreement purporting to surrender custody to a non-relative. Id. The trial court granted custody to the adoptive parent after finding that the child's best interest lay with that grant of custody. Id. The court of appeals reversed the judgment, determining that the natural mother was entitled to custody as a matter of law. Id. at 91-92. The Supreme Court, then, reversed the appeals court's judgment, but it remanded the cause for the trial court to consider mother's suitability as a parent in accordance with the standard announced in its opinion. Id. at 99.
In the Perales opinion the Supreme Court noted a long-standing judicial rule recognizing that parents who are "suitable" have a "paramount" right to custody of their minor children unless they forfeit that right by contract, abandonment, or by their becoming unable to care for the children. Id. at 97, quoting Clark v. Bayer (1877), 32 Ohio St. 299. The court distinguished Boyer by noting that Boyer arose under R.C. 3109.04
and involved a custody award to a relative of the child, whereas thePerales case arose under R.C. 2151.23(A) and involved the custody claims of a non-relative. Id. at 96. Thus, the court rejected the best-interest-only approach of Boyer for matters arising under R.C.2151.23. Id. The court held that before a juvenile court could award custody to a non-parent there must be a judicial finding of unsuitability, which could be shown by evidence that the parent contractually relinquished custody, that the parent had become incapable of caring for the child, or that an award of custody to the parent would be detrimental to the child. Id. at syllabus.
The adoption of two different standards for parent/non-parent custody disputes in Boyer and Perales has resulted in much confusion. See Bakerv. Baker (1996), 113 Ohio App.3d 805, 808; Thrasher v. Thrasher (1981),3 Ohio App.3d 210 ("It is evident that there may be disputes between parents and non-parents under either R.C. 3109.04 or 2151.23, and it would be inconsistent and unwise to have two distinct substantive law tests, one for each statute."); Wright v. Wright (Oct. 19, 1995), Cuyahoga App. 67884, unreported, 1995 WL 614500 at *9 (Harper, J., dissenting) ("The law is certainly unsettled in this regard considering the difference of opinion by the appellate courts of this state following the Supreme Court of Ohio's decision in Perales."). The resulting inconsistency is most apparent in cases like the case at hand, where a relative of the child and the child's natural parent compete for custody. If the custody dispute arises in the context of a divorce, under R.C. 3109.04(D)(2) and Boyer, the court need only consider the best interest of the child. See, e.g.,Baker, 113 Ohio App.3d at 812. On the other hand, if a custody dispute arises as an original action in the juvenile court, the common-lawPerales standard applies and the court must weigh parental suitability. See, e.g., Reynolds v. Goll (1996), 75 Ohio St.3d 121, 123; In re Porter
(1996), 113 Ohio App.3d 580, 589. Other than the difference in the statutes, there appears to be little logic in applying different standards simply because different divisions of the court are exercising jurisdiction. See Thrasher, 3 Ohio App.3d at 213.
In Thrasher v. Thrasher (1981), 3 Ohio App.3d 210, the Ninth District Court of Appeals, while noting that the Supreme Court in Perales
distinguished R.C. 3109.04 because that section generally pertains to custody disputes between two parents rather than between a parent and a non-parent, nevertheless found the reasoning of Perales applicable to R.C. 3109.04. The court stated:
 "Clearly the best interests test of R.C. 3109.04 was not meant to apply only to disputes between parents as Perales indicates. The language of the statute itself states that if granting custody to neither parent is in the best interests of the child, the court may grant custody to another relative. In Boyer v. Boyer, supra, where the Supreme Court construed R.C. 3109.04
to require only a best interests test, the dispute was between a parent and a non-parent. It is evident that there may be disputes between parents and non-parents under either R.C. 3109.04 or 2151.23, and it would be inconsistent and unwise to have two distinct substantive law tests, one for each statute. In fact, as the dissent in Perales notes, R.C. 2151.23 is merely a jurisdictional statute which does not have a substantive law test attached to it. Thus, by re-introducing the suitability test the court in effect modified Boyer, supra, and its construction of R.C. 3109.04."
The Thrasher court further noted that the Supreme Court handled the potential conflict between the suitability test and the best interest test by defining suitability in terms of the best interest of the child. See syllabus of Perales, supra (one indicia of parental unsuitability is if "an award of custody to the parent would be detrimental to the child.").
The Ninth District has subsequently criticized its holding inThrasher. In Reynolds v. Goll (1992), 80 Ohio App.3d 494, affirmed (1996), 75 Ohio St.3d 121, the Ninth District recognized that Boyer was still controlling precedent in proceedings under R.C. 3109.04 and announced its intention to no longer follow the precedent of Thrasher.Id. at 498; see also Baker, 113 Ohio App.3d at 813, (Ninth District holding that an explicit finding of unsuitability is not necessary under R.C. 3109.04.). However, in Comstock v. Comstock (Mar. 1, 2000), Lorain App. No. 99CA007339, unreported, 2000 WL 235552, the Ninth District stated:
 "Both R.C. 3109.04 and R.C. 2151.23 provide for custody of a child to be awarded to a nonparent. In custody proceedings between a parent and a nonparent, custody may not be awarded to the nonparent without first determining that the parent is unsuitable. In re Perales (1977), 52 Ohio St.2d 89, 369 N.E.2d 1047, syllabus." 2000 WL 235552 at *2.
Nevertheless, the Third District had already adopted the Thrasher
rationale in In re Dunn (1992), 79 Ohio App.3d 268, 271, and has continued to follow it. See Houser v. Houser (Aug. 31, 1998), Mercer App. No. 10-98-7, unreported, 1998 WL 598104. Likewise, the Fourth District Court of Appeals has adopted the Thrasher approach, Van Hoosev. Van Hoose (Apr. 19, 1990), Pike App. No. 433, unreported, 1990 WL 54873, and appears likely to adhere to it, see Thompson v. Thompson
(Aug. 10, 1995), Highland App. No. 94CA859, unreported, 1995 WL 481480.
More importantly, the United States Supreme Court has repeatedly recognized the fundamental right of parents to make decisions concerning the care, custody, and control of their children. See, e.g., Meyer v.Nebraska (1923), 262 U.S. 390, 399, 401, 43 S.Ct. 625, 67 L.Ed. 1042
(holding that the "liberty" protected by the Due Process Clause includes the right of parents to "establish a home and bring up children" and "to control the education of their own."); Pierce v. Society of Sisters
(1925), 268 U.S. 510, 534-535, 45 S.Ct. 571, 69 L.Ed. 1070 (holding that the "liberty of parents and guardians" includes the right "to direct the upbringing and education of children under their control."); Prince v.Massachusetts (1944), 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 ("It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.");Stanley v. Illinois (1972), 405 U.S. 645, 651, 92 S.Ct. 1208,31 L.Ed.2d 551 ("It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children `come[s] to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements.'" (citation omitted)); Wisconsin v. Yoder (1972), 406 U.S. 205, 232,92 S.Ct. 1526, 32 L.Ed.2d 15 ("The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition."); Quilloin v. Walcott (1978),434 U.S. 246, 255, 98 S.Ct. 549, 54 L.Ed.2d 511 ("We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected."); Parham v. J. R. (1979), 442 U.S. 584,602, 99 S.Ct. 2493, 61 L.Ed.2d 101 ("Our jurisprudence historically has reflected Western civilization concepts of the family as a unit with broad parental authority over minor children. Our cases have consistently followed that course."); Santosky v. Kramer (1982), 455 U.S. 745, 753,102 S.Ct. 1388, 71 L.Ed.2d 599 (discussing "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child."); Washington v. Glucksberg (1997), 521 U.S. 719, 720,117 S.Ct. 2258 ("In a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the `liberty' specially protected by the Due Process Clause includes the righ[t] * * * to direct the education and upbringing of one's children." (citing Meyer andPierce)).
The U.S. Supreme Court reaffirmed this principle once again as recently as June 2000 in Troxel v. Granville (2000), 530 U.S. 57, 120 S.Ct. 2054,147 L.Ed.2d 49. In that case, the court found a Washington state nonparental visitation statute at odds with this principle and ruled it unconstitutional. The statute provided, "[a]ny person may petition the court for visitation rights at any time," and the court may grant such visitation rights whenever "visitation may serve the best interest of thechild." (Emphases added.) Wash.Rev. Code 26.10.160(3). The court noted:
 "That language effectively permits any third party seeking visitation to subject any decision by a parent concerning visitation of the parent's children to state-court review. Once the visitation petition has been filed in court and the matter is placed before a judge, a parent's decision that visitation would not be in the child's best interest is accorded no deference. Section 26.10.160(3) contains no requirement that a court accord the parent's decision any presumption of validity or any weight whatsoever. Instead, the Washington statute places the best-interest determination solely in the hands of the judge. Should the judge disagree with the parent's estimation of the child's best interests, the judge's view necessarily prevails. Thus, in practical effect, in the State of Washington a court can disregard and overturn any decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge's determination of the child's best interests." Troxel, 530 U.S. at ___, 120 S.Ct. at 2061.
Although R.C. 3109.04 does not sweep as broadly as the statute at issue in Troxel, it nevertheless "directly contravene[s] the traditional presumption that a fit parent will act in the best interest of his or her child," Troxel, 530 U.S. at ___, 120 S.Ct. at 2062, when a nonparent moves for custody.
Viewing R.C. 3109.04 in light of Troxel, I believe its constitutionality as applied in certain situations is open to debate. However, this is not the case for such a determination. The trial court took the exact approach I would advocate in a case such as this one. The court observed:
 "Normally, custody or parental rights issues are determined purely by the best interest of the child. Where a non-parent is requesting custody or `parental rights' a threshold finding that both natural parents are unsuitable is necessary before the Court reaches the issue of the best interests of the child." Feb. 1, 1999 Findings of Fact and Conclusions of Law, p. 7
The court then went on to give a detailed and well-reasoned explanation that appellant is unsuitable. Based on the foregoing, I concur in the judgment only.