[Cite as *In re O.P.*, 2020-Ohio-4835.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE O.P.

A Minor Child

[Appeal by Mother, M.P.]

:
:
:
:
:
:

No. 109355

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** October 8, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. CU-13-110123

---

***Appearances:***

Russ Gates, *for appellant.*

Paul E. Carpenter, *for appellees.*

ANITA LASTER MAYS, P.J.:

{¶ 1} Appellant M.P. ("Mother"), single mother of O.P., appeals the judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division, that awarded legal custody of O.P. (d.o.b. Mar. 6, 2011) to appellees D.M. and M.M., respectively the aunt ("Aunt") and uncle ("Uncle") of O.P. and named them the residential parents. Appellees are the sister and brother-in-law of Mother.

Biological father D.T. ("Father"), Mother's first cousin, was a party in the lower court case but did not appeal the judgment. We reverse and remand the trial court's judgment.

## I. Background and Facts

{¶ 2} Mother and child moved in with appellees upon her hospital discharge after O.P.'s birth. Mother began to experience postpartum depression challenges that required several periods of hospitalization. O.P. remained with appellees until the age of three with occasional visits by Mother.

{¶ 3} On July 16, 2013, Mother through counsel filed a complaint for writ of habeas corpus pursuant to Juv.R. 10(A) and R.C. 2725.01 against appellees for wrongfully withholding O.P. The trial court adopted an interim agreement between the parties that granted temporary custody to Aunt and Uncle. The agreement was subsequently modified and, according to appellees, they remained temporary legal custodians in each modification.

{¶ 4} A December 11, 2015 agreed shared parenting order crafted by the parties and adopted by the trial court named Mother as the residential parent for school purposes and provided that Father intended to share part of his parenting time with appellees. The document is signed by Mother, Father, and appellees.

{¶ 5} On August 10, 2016, Mother moved to modify the agreed shared parenting plan to terminate visitation by appellees. Appellees filed a motion to intervene, modify custody, and show cause. The trial court appointed counsel and a guardian ad litem ("GAL") to represent Mother in the show cause hearing due to

Mother's mental health issues.  Mother stipulated to a finding of contempt on December 16, 2016, for withholding O.P. from Aunt and Uncle.

{¶ 6} A hearing on appellees' motion for custody was held on September 13, 2017, and the trial court expressed concern about Mother's refusal to allow visitation by appellees, and Mother's mental health issues, financial instability, and unstable living conditions.  The trial court granted temporary possession[1] of O.P. to appellees.

{¶ 7} Mother moved to modify custody on May 24, 2019, based on changed circumstances and supplemented the motion on June 18, 2019.  The parties had an additional custody and visitation evaluation completed by the court's diagnostic clinic.  Trial was held on September 27, 2019, and included testimony from multiple witnesses, 13 psychological evaluations conducted from October 2012 through April 2019, and testimony by the child's former and current GALs.

{¶ 8} On December 3, 2019, the trial court determined:

Therefore, after consideration of the statutory factors, and considering the testimony of the witnesses and the opinions of the medical experts, and further considering the arguments of counsel and the recommendation of the GAL, the Court makes the following Orders:

1. The Motion of Mother to Reinstate the Shared Parenting Plan of 2015, is not well taken and is overruled;

2. The Motion of the Father for Custody is not well taken and is overruled;

3. The Motion for Custody filed by counsel for [Aunt and Uncle] is granted.

---

[1] "Temporary possession" is not a custody award but defers the determination of custody to a later date.  *B. J. Funaro v. S. A. Funaro*, 8th Dist. Cuyahoga No. 44439, 1982 Ohio App. LEXIS 13508, *5 (June 10, 1982).

It is therefore the Order of the Court that [Aunt and Uncle] be named legal custodians and residential parents of the minor child [O.P.]. This is with the understanding that liberal visitation will be provided for both Mother and Father.

Journal entry No. 0912963286, pg. 4 (Dec. 3, 2019).

{¶ 9} Mother appeals.

## II. Assignments of Error

{¶ 10} Mother assigns the following errors:

I.    The trial court abused its discretion by not making a finding of unsuitability before granting custody to the nonparents.

II.    Assuming arguendo a finding of unsuitability, such a finding is against the manifest weight of the evidence.

III.    The trial court abused its discretion by not appointing counsel when the child was removed on September 13, 2017.

IV.    The trial court abused its discretion in its Judgment Entry on December 3, 2019, when assessing the evidence and making its conclusion.

## III. Discussion

{¶ 11} "A trial court enjoys broad discretion in custody proceedings because 'custody issues are some of the most difficult and agonizing decisions a trial judge must make.'" *In re C.V.M.*, 8th Dist. Cuyahoga No. 98340, 2012-Ohio-5514, ¶ 5, quoting *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). "A trial court's custody determination will not be disturbed unless the court abused that discretion." *Id.*, citing *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). "An 'abuse of discretion' connotes that the court's attitude is 'unreasonable, arbitrary, or unconscionable.'" *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d

217, 219, 450 N.E.2d 1140 (1983); *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989).

{¶ 12} "[T]he trial court's standard of review in a legal custody proceeding is not clear and convincing evidence as in permanent custody proceedings, but merely preponderance of the evidence." *In re C.V.M.* at ¶ 7, citing *In re D.P.*, 10th Dist. Franklin No. 05AP-117, 2005-Ohio-5097, ¶ 52 (citations omitted). This standard is appropriate "[b]ecause legal custody where parental rights are not terminated is not as drastic a remedy as permanent custody." *Id.* at *id.* A "preponderance of the evidence" means "'evidence that's more probable, more persuasive, or of greater probative value.'" *In re C.V.M.* at *id.*, quoting *State v. Finkes*, 10th Dist. Franklin No. 01AP-310, 2002-Ohio-1439.

## A.  Unsuitability

{¶ 13} Mother argues that *In re Perales*, 52 Ohio St.2d 89, 369 N.E.2d 1047 (1977), requires a finding of parental unsuitability as a prerequisite to awarding custody to the nonparent appellees. Appellees concur that *Perales* is the standard.

> In a child custody proceeding between a parent and nonparent, not arising from an abuse, neglect or dependency determination, a court may not award custody to the nonparent "without first making a finding of parental unsuitability — that is, without first determining that a preponderance of the evidence shows that the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child."

*In re C.V.M.* at ¶ 8, quoting *In re Perales*, 52 Ohio St.2d 89, 369 N.E.2d 1047 (1977), syllabus; *Hockstok v. Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, ¶ 17.

**{¶ 14}** "The suitability test" is deemed to be "a higher standard than the best interest test." *T.A.J. v. G.L.D. (In re D.D.)*, 2017-Ohio-8392, 100 N.E.3d 141, ¶ 13 (7th Dist.). "A pure 'best interest' test looks totally to the best situation available to the child and places the child in that situation." *In re C.V.M.*, 8th Dist. Cuyahoga No. 98340, 2012-Ohio-5514, at ¶ 10, citing *Thrasher v. Thrasher*, 3 Ohio App.3d 210, 213, 444 N.E.2d 431 (9th Dist.1981). "The *Perales* test, however, requires that some detriment to the child be shown before he is taken away from an otherwise suitable parent." *Id.* at *id.*

**{¶ 15}** "[T]here is no bright-line test or standard" that defines "what is detrimental to [a] child[.]" *In re C.V.M.* at ¶12. However, a review of Ohio cases "demonstrates that where courts found an award of custody to a parent detrimental, the court found serious problems with the unsuitable parent." *Id.* Cited among the examples is *Slivka v. Sealock*, 5th Dist. Morgan No. 00-CA-13, 2001 Ohio App. LEXIS 2408 (May 18, 2001), where the parent had a history of behavioral and psychological problems and the husband had a history of domestic violence.

**{¶ 16}** The parent, not the nonparent, is the focus in a suitability test. *In re C.V.M.* at ¶ 15. "Only after a finding of parental unsuitability, should the court then engage in a best-interest test to determine if custody to the nonparent is in the child's best interests." *Id.*

{¶ 17} In the instant case, the trial court entertained considerable evidence during the trial, which included 13 psychological reports regarding Mother as well as two letters of treatment compliance for her, a court diagnostic clinic report, and the GAL report. The trial court heard testimony from witnesses including: O.P.'s former counselor, Mother, Father, one of Mother's treating physicians, a mental health therapist, O.P.'s former teacher, Mother's former physician, O.P.'s former GAL, several friends of Mother, Aunt and Uncle, and O.P.'s GAL called by the trial court. The parties also submitted written closing arguments.

{¶ 18} The record supports the trial court's due consideration of Mother's suitability such as whether: (1) Mother contractually relinquished custody of O.P., (2) Mother became totally incapable of supporting or caring for O.P. or (3) an award of O.P. to Mother would cause detriment to O.P. *In re Perales*, 52 Ohio St.2d 89, 369 N.E.2d 1047, at ¶ 8.

{¶ 19} The trial court noted that, due to Mother's psychiatric issues after O.P.'s birth, Mother placed O.P. in appellees' care who then raised O.P. for the next three years. Mother no longer lived with appellees and only paid occasional visits to the child. With the consent of Father and Mother, appellees commenced adoption proceedings.[2] Mother changed her mind and requested custody of O.P. Mother regained custody in March 2014 and entered a court-approved parenting plan that provided for visitation by appellees. Mother thereafter moved to modify the plan

---

[2] Mother testified that she executed a document that provided consent for the adoption but that she did so under pressure from appellees.

and terminate the visits. In fact, Mother denied visitation by appellees on 24 occasions despite the court order.

{¶ 20} The trial court discussed Mother's history of psychological problems, attempts to separate O.P. from appellees and Father and Mother's inability to support O.P. In September 2017, the trial court awarded temporary possession of O.P. to appellees due to the GAL's opinion that Mother's living and financial conditions were unstable.

{¶ 21} The trial court documented the grounds for its decision to appoint counsel and a GAL for Mother during the show cause proceedings. "It was the opinion of the Court that Mother's mental health issues would make it difficult for her to fully appreciate and understand the various legal proceedings." Journal entry No. 0912963286, pg. 2 (Dec. 3, 2019).

{¶ 22} Mother urges that the record supports receipt of diligent treatment for the mental health concerns, that Mother loves O.P. and that there is no indication that Mother mistreats O.P. Mother also pointed to residential stability and employment since May 2018, and testified that she was licensed as a cosmetologist in approximately 2000 and has had a managing cosmetology license for the past ten years.

{¶ 23} To that end, the trial court found the testimony of Mother's former psychiatrist Dr. Phillip Dines, Ph.D., M.D. ("Dr. Dines") of University Hospitals, to be "[o]f particular importance." Journal entry No. 0912963286, p. 3 (Dec. 3, 2019).

[Dr. Dines] is a psychiatrist with more than 30 years' experience. He had examined Mother and offered testimony based on his previous physician/patient relationship. He recently completed a forensic evaluation at the request of the parties.

Dr. Dines concluded that Mother continues to manifest limitations in judgment and continues to have insufficient understanding of her limitations and psychiatric conditions.

Dr. Dines determined, *to a reasonable degree of medical certainty*, that Mother "suffers from bipolar disorder, post-traumatic stress disorder and borderline intellectual functioning with presentation now of memory loss." He also testified that bipolar disorder was "not curable."

Dr. Dines also testified that the care of [Mother's] daughter "can be a stressor or risk that could exacerbate her mental health condition as well as the well-being of her daughter."

*Id.* at p. 3-4.

{¶ 24} Mother counters that Mother's witness, James C. Cunagin, M.D. ("Dr. Cunagin"), a board-certified psychiatrist, did not find that Mother suffered from bipolar disorder. However, the doctor admitted that his October 9, 2018 report was written at the request of Mother and that he did not review the reports from the other experts. Dr. Cunagin also stated that he relied on Mother's "self-reporting" of how Mother has been doing. (Tr. 239.) The doctor did not observe the interaction of Mother with the child.

{¶ 25} The fact that Mother was represented by three retained attorneys, one court-appointed attorney, and two GAL's while the case was pending is cited by the trial court as a further indication of Mother's ongoing behavioral and judgment concerns. The trial court also quoted the report of the court diagnostic clinic's forensic psychologist:

> "[Mother] made it clear that if she were awarded sole custody of [O.P.] she would most likely sever [O.P.'s] relationship with the [appellees] and would prefer that Father have no contact with her either. This would not be in [O.P.'s] best interest."

*Id.* at p. 4.

{¶ 26} The forensic psychologist's report not only implies unsuitability, it reflects the psychologist's opinion that custody to Mother would not be in the child's best interest. The trial court considered additional best interest factors. O.P. has been happy and well-adjusted with appellees and participates in the gifted program at her school. A former teacher testified that O.P. is "bright," "on time and always prepared." Journal entry, p. 3. The former GAL "previously recommended that the minor child be placed with Mother." *Id.*

{¶ 27} Though Mother had, for the past year or so, maintained an apartment and employment while the custody motion was pending, Mother "repeatedly" changed her places of residence and employment and "received and then lost disability benefits." *Id.* at p. 3. Mother also engaged in several attempts at self-harm.

{¶ 28} The trial court also noted:

The GAL testifies that "the best interest of the minor child would be served by granting legal custody to [appellees]. [Appellees'] home is quiet, stable, and secure. [Appellees] provided visitation for the Mother and Father and seem best suited for the long-term stability of the child."

Journal entry No. 0912963286, p. 4 (Dec. 3, 2019).

{¶ 29} It is argued by appellees that the record evidences the trial court's consideration of the suitability of Mother and subsequent determination of the best

interest of the child. *In re C.V.M.*, 8th Dist. Cuyahoga No. 98340, 2012-Ohio-5514, at ¶ 15. It is true that the trial court stated that it considered the "statutory factors," "testimony of the witnesses," "opinions of the medical experts," "arguments of counsel and the recommendation of the GAL." *Id.* at p. 4. It has also been held that *In re Perales* "does not require a trial court to use any particular 'magic words' in making a finding of unsuitability." *In re Medure*, 7th Dist. Columbiana No. 01 CO 3, 2002-Ohio-5035, ¶ 43. It is further true that "once the court determines that the parent has forfeited custody or that parental custody would be detrimental to the child, it must indicate that a preponderance of the evidence militates against parental custody by making a finding of unsuitability." *In re Perales*, 52 Ohio St.2d at 98-99, 369 N.E.2d 1047.

{¶ 30} The deficiency posed in the instant case is that there is no announcement or explanation on the record or in the judgment entry that proclaims that Mother is unsuitable and that legal custody to appellees is in the best interest of the child. A court speaks through its journal entries. *Gaskins v. Shiplevy*, 76 Ohio St.3d 380, 382, 667 N.E.2d 1194 (1996).

{¶ 31} It is the decision of this court that the case must be remanded for the trial court "to actually state in the court's journal that its judgment" is that (1) Mother is unsuitable, and (2) legal custody is in the best interests of the child and to

explain the reasons underlying each facet of that two-part judgment. *In re Bell*, 7th Dist. Noble No. 04 NO 321, 2005-Ohio-6603, ¶ 56.[3]

**{¶ 32}** Therefore, we sustain the assignment of error and reverse the trial court's judgment. The case is remanded for further proceedings consistent with this opinion.

**{¶ 33}** Our disposition of the first assigned error renders the remaining assigned errors moot. App.R. 12(A)(1)(c).

**{¶ 34}** The trial court's judgment is reversed and remanded for proceedings consistent with this opinion.

It is ordered that appellant recover from appellees cost herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

---

[3] We reiterate that the "suitability test" is deemed to be "a higher standard than the best interest test." *T.A.J. v. G.L.D. (In re D.D.)*, 2017-Ohio-8392, 100 N.E.3d 141, ¶ 13 (7th Dist.). The standards are not the same. As stated herein, pursuant to *In re C.V.M.* at ¶ 10, and *In re Perales*, 52 Ohio St.2d 89, 369 N.E.2d 1047, it is inappropriate for the trial court to merely engage in a comparative analysis between Mother and appellees.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., and
LARRY A. JONES, SR., J., CONCUR