OPINION
{¶ 1} Defendant-appellant, Tabitha Townsend ("appellant"), appeals from the denial of her writ of habeas corpus and the grant of plaintiffs-appellees, Harold and Marilyn Ratliffs', complaint for custody of appellant's son.
 {¶ 2} On October 25, 1999, Darrel J. Ratliff, Jr. was born to appellant and Darrel Ratliff. At the time, appellant was 16-years old and the child's father was 20-years of age. On February 9, 2000, Darrel Ratliff's parents, with appellant's consent, took physical custody of the baby in order to allow appellant to finish her schooling and obtain employment. The child then lived with the Ratliffs in North Carolina. Appellant requested her son's return more than once, but the Ratliffs refused because of various reasons, including her employment and lack of funds.
 {¶ 3} On February 26, 2001, Harold and Marilyn Ratliff filed a complaint for custody of Darrell Jr. On February 28, 2001, appellant filed a complaint for custody in habeas corpus, arguing that, as the child's mother, she was entitled to custody pursuant to R.C. 3109.042. Appellant claimed the Ratliffs were unlawfully restraining Darrell, Jr., thereby depriving her of custody. The habeas corpus action was combined for hearing with the Ratliffs' custody case.
 {¶ 4} On July 12, 2001, the magistrate issued its decision. The magistrate found that the Ratliffs are better suited to care for the child, but determined appellant did not abandon her child to the Ratliffs' care because she has tried to regain custody of her son, which efforts were denied by the Ratliffs. The magistrate found appellant did not have a total inability to provide care and support for Darrel, Jr. The magistrate determined appellant was a suitable parent. The magistrate found the complaint for custody filed by the Ratliffs not to be well-taken and granted appellant's writ of habeas corpus.
 {¶ 5} The trial court adopted the magistrate's decision on July 12, 2001. The Ratliffs filed objections to the magistrate's decision on July 25, 2001. The Ratliffs objected to the findings that appellant was a suitable parent, that appellant did not abandon her child, that there was sufficient evidence to find appellant was able to provide care and support, and that the change of custody would be in the child's best interest.
 {¶ 6} The trial court vacated the magistrate's decision granting custody of Darrel Jr. to appellant and ordered the child placed with the Ratliffs. The court deemed appellant to be an unsuitable parent for her son because she voluntarily surrendered custody of the child to the Ratliffs due to her inability, financially and emotionally, to meet her son's needs. The court found appellant's financial and emotional ability to meet her son's needs remained the same at the time of the hearing as they had at the time of the child's removal. The court determined appellant lived with her mother and stepfather in an environment of alcohol abuse and physical violence and that appellant lacked any insight as to how this environment may affect her child. Further, the court stated appellant did not appreciate the medical risks caused to her asthmatic son by her mother and stepfather smoking in the home. Also, at the time of the hearing, appellant was pregnant with another child by a twenty-five year old man, who resided with her in her mother's home, and appellant was on maternity leave and had no source of income. The court found appellant had a total inability to provide for the care and support of her son and that she was unsuitable to parent the child. The trial court denied appellant's writ of habeas corpus.
 {¶ 7} On October 29, 2001, the trial court issued its judgment entry, finding that: (i) appellant voluntarily surrendered custody of her son to the Ratliffs because of her inability to financially and emotionally meet his needs, and that these conditions had not changed in the interim; (ii) that appellant lived in an environment of alcohol abuse and physical violence and did not understand how this affected her son; (iii) appellant had little insight as to how smoking in the home affected her asthmatic son; (iv) appellant was pregnant at the time of the hearing by another man who lived with her in her parents' home; and, (v) appellant had no source of income due to a pregnancy leave. The court found appellant was an unsuitable parent.
 {¶ 8} Appellant assigns the following errors for review:
 {¶ 9} "I. The trial court erred to the prejudice of defendant-appellant in finding that she was an unsuitable parent.
 {¶ 10} "II. The trial court erred to the prejudice of defendant-appellant in granting custody of the minor child to plaintiffs-appellants (sic) without a finding that they are suitable to have custody.
 {¶ 11} "III. The trial court erred to the prejudice of defendant-appellant in denying her petition for a writ of habeas corpus.
 {¶ 12} "IV. The trial court erred and abused its discretion in overturning the decision of the magistrate."
 {¶ 13} In her first assignment of error, appellant contends the trial court abused its discretion by finding she was an unsuitable parent. Appellant relies upon the magistrate's decision to support her argument that she is a suitable parent. In particular, appellant points out that the magistrate found the evidence did not establish that she abandoned her son, contractually relinquished his custody, had a total inability to support her son, or that she was otherwise unsuitable.
 {¶ 14} When reviewing an appeal from a trial court's decision to adopt, or not adopt, a magistrate's decision, this court must determine whether the trial court abused its discretion. The focus of the appeal is on the trial court's actions and not the decisions of the magistrate. SeeIn re Woodburn, 9th Dist. No. 20715, 2002-Ohio-35, 2002 Ohio App. LEXIS 1. A trial court, in ruling on a party's objections to a magistrate's decision, may adopt, reject, or modify that decision. Civ.R. 53(E)(4)(b).
 {¶ 15} Appellant seems to be arguing that the trial court could not overrule the magistrate's decision unless an error of law was apparent on the face of the decision. However, once the Ratliffs filed timely objections to the magistrate's decision, the trial court could reject the magistrate's decision pursuant to Civ.R. 53(E)(4)(b).
 {¶ 16} Appellant next asserts the trial court abused its discretion by finding she was unable to meet her child's financial and emotional needs. Appellant argues she testified to saving $500 for the care for her child, had a crib, bed, food, and diapers, and had obtained employment. Further, appellant applied for public assistance, including a public housing voucher.
 {¶ 17} R.C. 2151.23 gives juvenile courts exclusive jurisdiction to "determine the custody of any child not a ward of another court of this state." The Supreme Court of Ohio held in In re Perales (1977),52 Ohio St.2d 89, at syllabus:
 {¶ 18} "In an R.C. 2151.23(A)(2) child custody proceeding between a parent and a nonparent, the hearing officer may not award custody to the nonparent without first making a finding of parental unsuitability — that is, without first determining that a preponderance of the evidence shows that the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child." A court also may award custody upon a finding that the natural parent is otherwise unsuitable, that is the award would be detrimental to the child. Reynolds v. Goll (1996), 75 Ohio St.3d 121. Unsuitability is an independent basis for denying custody to a natural parent. In re Evans (July 31, 1998), 2nd Dist. No. 97-CA-25, 1998 Ohio App. LEXIS 3487.
 {¶ 19} Parents who are deemed suitable are considered to have the paramount right to custody of their minor children. Id. at 97. The right of parents to raise their children, coupled with the concomitant right of children to be raised by their parents, may not be interfered with unless the parent is unfit. Quilloin v. Walcott (1978), 434 U.S. 246. A trial court must measure the concept of the suitability of a parent in terms of the harmful effect of custody on the child, and not in terms of society's judgment of the parent. In re Perales, supra, at 98. Under Perales,
parental custody is presumed to be in the best interests of the child unless it can be shown that placement with a parent will be detrimental to the child. In re Porter (1996), 113 Ohio App.3d 580, 589.
 {¶ 20} A trial court's determination of whether a parent is unsuitable is within the court's sound discretion. The power of the trial court to exercise discretion in child custody determinations is peculiarly important and should be accorded the utmost respect. Therefore, a reviewing court should be guided by the presumption that the trial court's findings were correct. Reynolds, supra. A trial court's determination whether a parent has forfeited his or her paramount right to custody is a factual determination that will not be reversed by a reviewing court if it is supported by some competent, credible evidence. Id. Absent an abuse of discretion, an appellate court will not reverse a trial court's determination in a child custody matter. Davis v.Flickinger (1997), 77 Ohio St.3d 415, 416-417. An abuse of discretion connotes more than an error of law or judgment. Rather, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 21} Evidence submitted below shows that appellant lacks a high school degree, worked at an A W restaurant, did not have a telephone, lived with her mother, step-father, and three sisters, was on unpaid maternity leave while awaiting the birth of her second child, and babysat her five-year old sister. Appellant planned on marrying her twenty-five year old boyfriend. Appellant had saved the $500 mentioned above but never sent any money for the care of her son.
 {¶ 22} This evidence supports the trial court's decision. Appellant was about to have another child while still a minor herself. $500 would do little to support two small children. At the time of the last hearing, appellant was not working, had little prospects of obtaining employment which would sustain herself and two children without a high school degree, and could not take advantage of most of the public assistance available because she was a minor. There was a preponderance of the evidence admitted showing appellant could not support this child at the present time.
 {¶ 23} Appellant next argues the trial court erred by applying a "change of circumstances" standard. The judgment entry reflects that the trial court stated that the reasons which led to appellant agreeing to the Ratliffs taking custody of Darrel, Jr. originally had not changed. The trial court's point was that appellant could not care for her child at that time and that this reflected upon her suitability to parent the child at the time of the hearing. The trial court correctly focused on appellant's suitability to parent her son. That circumstances had not changed merely was a factor considered in arriving at the court's decision. As a result, we hold that the trial court did not apply a change of circumstances standard in reaching its decision.
 {¶ 24} Appellant disputes the trial court's consideration of the environment of her mother's home, where appellant lived at the time of the hearing. Appellant submits that the reports of the abuse were not recent and that there was no present threat of danger in the home. Appellant also argues that the alcohol use by her mother and step-father did not present any danger to her son.
 {¶ 25} Appellant admitted to having a violent confrontation with her stepfather in 1998 when he choked her. The stepfather was charged with domestic violence because of the incident. Appellant reported two instances of domestic violence between her mother and stepfather within the last three to four years. In one of those cases, her stepfather fired two shots at a bed where her mother was laying. The Children's Services Board investigated her mother, although the cases were closed later.
 {¶ 26} Appellant testified her mother and step-father drink three to four nights a week. Her mother was convicted of driving while intoxicated in 2000. Her mother attended alcohol classes and was told she was a social drinker.
 {¶ 27} Appellant stated she was not concerned about the domestic violence incidents or the alcohol consumption in her mother's home. Appellant intended to move out of the residence after she turned eighteen.
 {¶ 28} The domestic violence incidents are a concern and the trial court was correct in considering the evidence. One of the confrontations occurred between appellant and her stepfather and another involved the use of a firearm. Although appellant may have now obtained other housing, the trial court correctly focused on the situation as it existed at the time of the hearing and not on a future probability. Further, appellant admitted her mother and stepfather drank several times a week. The trial court did not abuse its discretion by considering this evidence.
 {¶ 29} Appellant maintains the trial court erred by finding she was an unsuitable parent because she lacked insight into her son's asthmatic condition. Both her mother and stepfather smoked in the home. Appellant averred they would not smoke in the home if her son lived there. Neither the mother nor stepfather testified regarding any change in their behavior if the baby resided in their home. The evidence before the court was that there was smoking in the home at which appellant intended to take her son.
 {¶ 30} The trial court also found appellant unsuitable because she was pregnant by a twenty-five year old man who had lived with her in her mother's home. Appellant correctly asserts that her subsequent pregnancy does not mean she is an unsuitable parent to her son. The court could consider whether appellant could support two children, financially and emotionally, but the pregnancy alone does not support a finding of unsuitability. However, based upon all the evidence, this finding by itself does not negate the trial court's ultimate ruling on appellant's suitability to parent Darrel, Jr.
 {¶ 31} Appellant contends that her employment status and her income have no bearing on her suitability to parent. As a parent, appellant has a legal duty to support her child. She admittedly never sent any money to the Ratliffs for her son's support and had saved a small amount in anticipation of regaining custody of the child. Whether appellant realistically understands her financial obligation to her son is a factor in determining her suitability to parent. Appellant's first assignment of error is overruled.
 {¶ 32} In her second assignment of error, appellant argues the trial court erred by not considering whether the Ratliffs were suitable. Appellant presents no law in support of this proposition and points to no evidence in the record showing that the Ratliffs were not suitable. Further, appellant did not raise the issue below and has waived any assertion of error on appeal. Appellant's second assignment of error lacks merit.
 {¶ 33} Appellant's third assignment of error states that the standard of consideration for a petition for habeas corpus is whether the natural parent is suitable to have custody, and not whether the grant or denial of the petition is in the best interests of the child. A review of the judgment entry shows that the trial court applied the suitability standard to this case. Appellant's third assignment of error is not well-taken.
 {¶ 34} In her final assignment of error, appellant argues the trial court should not have overruled the magistrate's decision because no evidence was taken at the hearing on the Ratliffs' objections. As stated above, Civ.R. 53 allows a trial court to reject a magistrate's decision. There is no requirement that the trial court first hold an evidentiary hearing before doing so. Appellant's fourth assignment of error is overruled. The judgment of the Portage County Court of Common Pleas, Juvenile Division, is affirmed.
DONALD R. FORD, J., ROBERT A. NADER, J., concur.